726 A.2d 238

## MARYLAND STATE HIGHWAY ADMINISTRATION

v.

**Joseph KIM et. al.**

**No. 15, Sept. Term, 1998.**

Court of Appeals of Maryland.

March 19, 1999.

Laura C. McWeeney, Asst. Atty. Gen., Annapolis (J. Joseph Curran, Jr., Atty. Gen.; Brian G. Kim, Asst. Atty. Gen., Baltimore, on brief), for Appellant.

W. Ray Ford, Bowie (Thomas F. Duley, Upper Marlboro, both on brief), for Appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The question that we are asked to resolve in this case is whether sovereign immunity bars an award of post-judgment interest, when the money judgment entered against a State agency, in accordance with the provisions of the Maryland Tort Claims Act, Maryland Code (1984, 1989 Cum.Supp.)

§ 12–104 [1] of the State Government Article, is for the maximum amount prescribed by the act. We hold that sovereign immunity does not preclude such an award.

## I.

This case had its genesis in an automobile accident, in July 1989, in which David Kim, a 15 year old summer school student, was seriously injured. His parents, Joseph and Hoon

---

1. Maryland Code (1984, 1989 Cum.Supp.) § 12–104 of the State Government Article provides:

"(a) In general.—Subject to the exclusions and limitations in this subtitle, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article.

"(b) Exclusions and limitations.—Immunity is not waived under this section for:

"(1) punitive damages;

"(2) interest before judgment;

"(3) a claim that arises from the combatant activities of the State militia during a state of emergency;

"(4) any tortious act or omission of State personnel that:

"(i) is not within the scope of the public duties of the State personnel; or

"(ii) is made with malice or gross negligence; or

"(5) a cause of action that law specifically prohibits

"(c) Payment of claims exceeding coverage.—(1) The Treasurer may pay from the State Insurance Trust Fund all or part of that portion of a tort claim which exceeds the coverage obtained under Title 9 of the State Finance and Procurement Article under the following conditions:

"(i) the tort claim is one for which the State and its units have waived immunity under subsections (a) and (b) of this section;

"(ii) a judgment or settlement has been entered granting the claimant damages to the full amount of coverage under Title 9 of the State Finance and Procurement Article; and

"(iii) the Board of Public Works, with the advice and counsel of the Attorney General, has approved the payment.

"(2) Any payment of part of a settlement or judgment under this subsection does not abrogate the sovereign immunity of the State or any units beyond the waiver provided in subsections (a) and (b) of this section."

The present version of the statute, see Maryland Code (1984, 1995 Repl.Vol., 1998 Cum.Supp.), § 12–104 of the State Government Article, differs only slightly: § 12–104(a)(2), now specifically limits the State's tort immunity to $100,000 and, rather than enumerate the "Exclusions and limitations," subsection (b) references § 5–522(a) of the Courts and Judicial Proceedings Article, which does. Unless hereinafter otherwise specified, all statutory references are to the 1989 Maryland Code.

Kim, (the "appellees"), as next friends, filed a negligence action in the Circuit Court for Prince George's County against, among others, the State Highway Administration of the Department of Transportation ("SHA"), the appellant, and the Board of Education of Prince George's County ("BOE"). The case was tried to a jury, which, at the conclusion of the trial, returned a verdict awarding the appellees. $650,000 in damages. Pursuant to Maryland Code (1985, 1988 Repl.Vol., 1989 Cum.Supp.), § 9–105 [2] of the State Finance & Proc. Article and COMAR 25.02.01.01(B)(1) (1984, Supp. 3 1989),[3] with respect to the SHA, and pursuant to Maryland Code (1978, 1989 Repl.Vol.) § 4–105 [4] of the Education Article, with respect to the BOE, the trial court reduced the award to $50,000

---

**2.** Maryland Code (1985, 1988 Repl.Vol., 1989 Cum.Supp.) § 9–105 of the State Finance & Proc. Article provides, in relevant part:

\* \* \*

"(c) Coverage for the Maryland Tort Claims Act.—To the extent that funds are available in the State budget, the Treasure shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the Maryland Tort Claims Act."

**3.** That regulation reads in its entirety:

".01 Limitations of Liability.

"A. Within budgetary appropriations and market availability, purchased insurance shall establish the limitations of State liability under the Maryland Tort Claims Act, State Government Article, §§ 12–101–12–110, Annotated Code of Maryland.

"B. Within budgetary appropriations and subject to the following limitations, self-insurance may afford protection to the State and its units and personnel as defined by the Maryland Tort Claims Act for those risks not covered by purchased commercial insurance:

"(1) $50,000 to a single claimant for injuries;

"(2) $200,000 to be apportioned among multiple claimants for injuries arising from a single accident or occurrence; or

"(3) Those limitations otherwise established by any insurance policy issued to a State agency or other unit of State government by the State Insurance Trust Fund.

"C. Sovereign immunity is not waived for claims in excess of the limitations set forth in §§ A–B, above."

**4.** Maryland Code (1978, 1989 Repl.Vol.) § 4–105 of the Education Article provides, in part:

"(a) *Comprehensive liability insurance.*—Each county board shall carry comprehensive liability insurance to protect the board and its

and $100,000, respectively, and judgment was entered accordingly.

Both the SHA and the BOE noted an appeal to the Court of Special Appeals. In an unreported opinion, that court affirmed the judgments. After the intermediate appellate court issued its mandate, the SHA tendered to the appellees, in payment of the judgment, its check for $50,000. It rejected, however, the appellees' demand for post-judgment interest on that judgment, from the date of its entry. Consequently, the appellees filed, in the circuit court, a motion for appropriate relief, in which they asked the court to award post-judgment interest on the SHA judgment. The court granted the appellees' motion, prompting the SHA's appeal. This Court, on its own motion, granted certiorari, before the Court of Special Appeals considered the matter.

(a)

The appellant's argument proceeds from the premises that "[t]he sovereign immunity of the State may only be waived if the General Assembly has authorized suits for damages and has provided for the payment of the resulting judgments or settlements[,] *Kee v. State Highway Administration,* 313 Md. 445, 455, 545 A.2d 1312, 1317 (1988); *see Katz v. Washington Suburban Sanitary Commission,* 284 Md. 503, 508, 397 A.2d 1027, 1030 (1979)" and that the Maryland Tort Claims Act does not authorize payments for injury, loss, or damage, in excess of $50,000 in situations arising under the Act. From

---

agents and employees. The purchase of this insurance is a valid educational expense.

"(b) Standards for policies; coverage.—The State Board shall establish standards for these insurance policies, including a minimum liability coverage of not less than $100,000 for each occurrence. The policies purchased under this section shall meet these standards.

* * *

"(d) Defense of sovereign immunity.—(1) A county board may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured or a member of a pool described in subsection (c)(1)(ii) of this section, above $100,000.

"(2) A county board may not raise the defense of sovereign immunity to any claim of $100,000 or less."

those premises, the appellant argues that, by awarding the appellees post-judgment interest on a judgment, for the maximum amount for which the State's sovereign immunity has been waived and for which provision has been made for payment, the circuit court, in effect, expanded the waiver of sovereign immunity beyond the contemplation of the General Assembly, to claims in excess of $50,000. The Legislature has neither authorized nor provided funds to pay post-judgment interest in that circumstance, it asserts.

### (b)

The appellees argue, on the other hand, that the court quite properly awarded post-judgment interest on the judgment. The authority for doing so may be found, they maintain, by reading the Maryland Tort Claims Act in conjunction with Maryland Code (1974, 1989 Repl.Vol., 1989 Cum.Supp.) § 11–107(a)[5] of the Courts & Judicial Proceedings Article and Maryland Rule 2–604(b).[6] Because the State's sovereign immunity may be waived either directly or by implication and the right to post-judgment interest arises, not as a consequence of any damage their son suffered in the accident on July 25, 1989, but, instead, arises from the State's failure timely to pay the judgment rendered against it in February 1996, the appellees ask this Court to affirm the trial court's judgment.

### II.

As indicated, the issue we are asked to resolve is whether the State's sovereign immunity applies to post-judg-

---

**5.** Maryland Code (1974, 1989 Repl.Vol., 1989 Cum.Supp.) § 11–107(a) of the Courts & Judicial Proceedings Article provides, in relevant part:

"(a) Legal rate of interest on judgments.—Except as provided in § 11–106 of this article, the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment . . . ."

**6.** Rule 2–604 states in relevant part:

\* \* \*

"(b) Post-judgment Interest. A money judgment shall bear interest at the rate prescribed by law from the date of entry."

ment interest, where the judgment is for the maximum amount of damages permitted by the Maryland Tort Claims Act. We answer that question in the negative, concluding that the statute plainly and unambiguously does not so provide. We also recognize both that sovereign immunity bars the recovery of damages and that the award of post-judgment interest is not an award of damages.

By 1981 Md. Laws, Chap. 298, effective July 1, 1982, the General Assembly enacted the Maryland Tort Claims Act. Codified at Maryland Code (1974, 1980 Repl.Vol., 1983 Cum. Supp.), §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article, this legislation waived the tort immunity of the State under specified conditions and, thus, "afforded a remedy for individuals injured by tortious conduct attributable to the State." *Condon v. State*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993). Section 5–403(a) set forth the scope of the waiver: in six specified tort actions to recover damages,[7] " to the extent and in the amount that the State is covered by a program of insurance."[8]

---

7.   The actions enumerated were as follows:

* * *

   "(1) An action to recover damages caused by the negligent maintenance or operation of a motor vehicle by a State employee;
   "(2) An action to recover damages caused by the negligence of a health care employee of a State facility or institution or by a doctor, nurse, dentist, or related health care personnel employed by the State;
   "(3) An action to recover damages caused by the patently dangerous condition of a building, structure, or other public improvement owned and controlled by the State;
   "(4) An action to recover damages caused by the negligent use or maintenance of State property by a State employee;
   "(5) an action to recover damages caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by the State if constructive or actual notice of the condition existed; and
   "(6) An action to recover damages caused by the negligent failure of a State employee to properly supervise an activity at a State park or recreation facility."

8.   The statute referred to § 27 of Article 95, subsection (d) of which required the Treasurer "[t]o the extent that funds are available in the budget [to] provide self-insurance or purchased insurance or a combi-

Because it was but "a cautious beginning in the effort to abolish the sovereign immunity doctrine," [9] there were several enumerated instances in which the State's immunity was not waived. One such instance was when pre-judgment interest was sought. § 5–403(b).[10] In 1984, the Maryland Tort Claims Act was moved from Title 5, Subtitle 4, of the Courts and Judicial Proceedings Article, to its present location in the State Government Article. *See* 1984 Md. Laws, Chap. 284. The waiver of immunity provision, other than adding a tort action, *see* § 12–104(a), as well as the provision prescribing exceptions to the waiver, *see* § 12–104(b), remained substantially identical until they were amended in 1985. *See* 1985 Md. Laws, Chap. 538, § 2. Those amendments deleted the specified categories for which immunity was waived, *see Clea v. Mayor and City Council of Baltimore,* 312 Md. 662, 671 n. 6, 541 A.2d 1303, 1307 n. 6 (1988), and, with regard to those for which immunity was not waived, the reference to the dollar amount of the claim. Section 12–104(b) was also amended to exclude from the waiver, acts and omissions committed with

---

nation of self-insurance and purchased insurance sufficient to cover the liability of the State and its employees under Subtitle 4 of Title 5 of the Courts Article of this Code." *See* Maryland Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 95, § 27(d).

**9.** Carl F. Eastwick, Chief Legislative Officer for the Governor, "Sovereign Immunity Testimony," SB 585 (1982).

**10.** Subsection (b) of § 5–403 provided:
"Purposes for which immunity not waived.—The immunity of the State in tort is not waived for the following purposes:
"(1) Punitive damages;
"(2) Interest prior to judgment;
"(3) Individual claims in excess of $100,000;
"(4) An aggregate of claims arising from the same occurrence in excess of $500,000;
"(5) Any claim arising out of the combatant activities of the militia of this State during a state of emergency; and
"(6) Any cause of action specifically prohibited by law."
Although, as noted earlier, the version of the Maryland Tort Claims Act in effect today does not contain this provision, it does refer to § 5–522(a) of the Courts and Judicial Proceedings Article, which contains comparable provisions.

malice or gross negligence, or outside the scope of the State employee's public duties.

Thus, from its inception, the Maryland Tort Claims Act has exempted pre-judgment interest from the waiver of the State's sovereign immunity. At the same time, noticeable by its absence from that legislation, and, in particular, its "Exclusions and limitations" provision, is any mention of post-judgment interest. This difference in the treatment of pre-judgment and post-judgment interest is quite significant.

### a.

The allowance of interest on a judgment, at law, is of ancient lineage; the Maryland Legislature, very early in the history of the State, enacted legislation providing for the payment of interest on judgments. That legislation did not differentiate between debtors or in any way exempt the State from its reach, thereby, arguably demonstrating the legislature's desire that everyone, even the State, pay interest on judgments.

As early as 1802,[11] among the Laws of Maryland was a statute mandating that an administrator or an executor of an estate pay not only verdicts meted out by juries, but also "interest thereon from the time of rendering the said judgment." *See* Ch. 101, § 1 of the Acts of 1802, I. Dorsey's Laws of Maryland (1840), at 471–472. A short time later, in Ch. 153, § 4 of the Acts of 1809, a statute of more general operation was enacted. It provided:

---

**11.** The Maryland Constitution of 1851 also contained a provision pertaining to interest on judgments. That provision read:

"That the rate of interest in this State shall not exceed six percent. per annum, and no higher rate shall be taken or demanded, and the Legislature shall provide, by law, all necessary forfeitures and penalties against usury."

Md. Const. Art. III, Sec. 49 (1851). This provision was retained in the two subsequent constitutions, that of 1864 and 1867. A similar provision is in the present Maryland Constitution. That provision provides: "[t]he Legal Rate of interest shall be Six per cent. per annum; unless otherwise provided by the General Assembly." *See* Md. Const. Art. III, Sec. 57.

"And be it enacted, That in all cases where a verdict shall be given in any court of this state, the court before whom such verdict shall be given, shall and they are hereby authorized to enter such judgment upon the verdict as will carry an interest on the same until the payment of the damages assessed by the jury giving such verdict, in the same manner as is now used and practiced in the cases of a confession of judgment in said court."

I. Dorsey's Laws of Maryland (1840), at 590. Subsequently, a provision requiring the payment of post-judgment interest in respect of judgments by default was added to the laws of Maryland. *See* Ch. 161, § 5 of the Acts of 1811, I. Dorsey's Laws of Maryland (1840), at 605. That provision provided:

"Sec. 5. And be it enacted, That all judgments by default hereafter to be entered, shall carry interest in the same manner that judgments entered upon a finding of a jury now do; Provided always, that nothing contained in this act, except so far as the same relates to judgments by default and appeals, shall extend or be construed to extend to any case now brought or pending in any of the courts of this state."

The provision pertaining to post-judgment interest appearing in Maryland Code: Public General Laws (1888), Art. 26, § 16, addressed judgments generally.[12] It read simply: "[a]ll judgments by confession, on verdict, or by default, shall be so entered as to carry interest from the time they are rendered." Although the provision in the 1914 Code was phrased somewhat differently,[13] the payment of post-judgment interest re-

---

**12.** Maryland Code (1860), Art. 29, § 15, the predecessor of Maryland Code (1888) Art. 26, § 16 provided, "[a]ll judgments by confession on verdict, or by default, shall be so entered as to carry interest from the time they were rendered." The only difference between this statute and the one that succeeded it is the comma between "by confession" and "on verdict." Perhaps the comma was inadvertently omitted from the statute in the 1860 Code.

**13.** Later provisions, including Maryland Code: Public General Laws (1914), Art. 26, § 16 of the Courts Article, read as follows:

mained a statutory requirement until Maryland Code (1951), Art. 26, § 17,[14] was repealed in 1957 Md. Laws, Chap. 399, § 1, effective June 1, 1957, in favor of a rule on the subject, promulgated by this Court, pursuant to Art. IV, § 18A of the Maryland Constitution,[15] and upon the recommendation of the Standing Committee on Rules of Practice and Procedure.

That rule, Maryland Rule 642, (present Maryland Rule 2–604), was adopted July 18, 1956, effective January 1, 1957, as a part of the "codification of the rules and procedural statutes of Maryland with respect to normal law and equity actions, including appeals to the Court of Appeals." *See* Twelfth Report of the Standing Committee on Rules of Practice and Procedure (1956). Largely mirroring the language of the statute it was to replace, Maryland Code (1951), Art. 26, § 17, it provided:

"Rule 642.  Interest on Judgment . . . . Law

A judgment by confession or by default shall be so entered as to carry interest from the time the judgment was rendered. A judgment on verdict shall be so entered as to carry interest from the date on which the verdict was

---

"All judgments by confession or by default shall be so entered as to carry interest from the time they are rendered, and all judgments on verdict shall be so entered as to carry interest from the date of the rendering of such verdict."

**14.** That provision read:

"All judgments by confession or by default shall be so entered as to carry interest from the time they are rendered, and all judgments on verdict shall be so entered as to carry interest from the date of the rendering of such verdict."

**15.** Article IV, § 18 A (present Article IV, § 18) provided, in part:

" The Chief Judge of the Court of Appeals shall be the administrative head of the judicial system of the State. He shall from time to time require, from each of the judges of the Circuit Courts for several counties and of the Supreme Bench of Baltimore City, reports as to the judicial work and business of each of the judges and their respective courts.... The Court of Appeals from time to time shall make rules and regulations to regulate and revise the practice and procedure in that Court and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law."

rendered. A judgment *nisi* entered by the court following a special verdict pursuant to Rule 560 (Special Verdict) or trial by the court without a jury pursuant to Rule 564 (Trial by the Court) shall be so entered as to carry interest from the date of the entry of judgment *nisi* ."

The rule was "legislative in nature," *see Ginnavan v. Silverstone,* 246 Md. 500, 504–05, 229 A.2d 124, 126 (1967), and, like the antecedent statute, was applicable only to judgments at law.

As this history demonstrates, the allowance of interest on a judgment is deep rooted in Maryland law. Both the statute codifying the practice and its successor Maryland Rule[16] predated the Maryland Tort Claims Act. Neither made an exception for the State. Moreover, when the Legislature enacted the Tort Claims Act, it did not include post-judgment interest in the list of exclusions from the waiver of sovereign immunity, even though pre-judgment interest was such an exclusion. The failure specifically to reserve the state's immunity with respect to post-judgment interest by including post-judgment interest in § 12–104(b) of the Act is evidence that it did so intentionally.

We have stated on prior occasions that, when the Legislature acts, it "is presumed to be aware of its own enactments," *State v. Hernandez,* 344 Md. 721, 727, 690 A.2d 526, 529 (1997) (citing *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993)), that it does so "with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *Bd. of Educ. of Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982); *Harden v. Mass Transit Adm.,* 277 Md. 399, 406–07, 354 A.2d 817, 821 (1976). As one

---

**16.** It is true, of course, that present Rule 2–604 was promulgated in 1982, after the Maryland Tort Claims Act was enacted. The Court of Special Appeals correctly points out, in *Brown v. Medical Mutual,* 90 Md.App. 18, 22, 599 A.2d 1201, 1203 (1992), that there is no suggestion that the Rules Committee intended to change the substantive law or do any more than update the law, by deleting references to " judgments nisi." *See Brown* at 22–3, 599 A.2d at 1203.

appellate court, addressing the issue *sub judice,* has put it, we know the Legislature "was well aware of [the] previously enacted definitions of interest," *Austin v. State,* 831 S.W.2d 789, 791 (Tenn.App.1991), and of the ordinary meanings of pre-judgment and post-judgment interest; thus, if the Legislature had intended to place a limit on the award of post-judgment interest it would have stated as much.

Moreover, it is well settled that, in determining legislative intent, we consider the language of a statute in its natural and ordinary signification, *see Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995); *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–7 (1994); *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537, 539 (1994), and where the language is neither ambiguous nor obscure, the language itself is dispositive. *See Gardner v. State,* 344 Md. 642, 648, 689 A.2d 610, 613 (1997); *Comptroller of the Treasury v. Jameson,* 332 Md. 723, 732–33, 633 A.2d 93, 94 (1993). Section 12–104(b) is clear, it excludes from the State's waiver of immunity only those items specifically enumerated. Post-judgment interest is not one of the enumerated items.

b.

Pre-judgment interest, as we have seen, is specifically included among the types of recoveries that are still subject to sovereign immunity, as provided in § 12–104(b). When the nature and purpose of pre-judgment interest is considered, in relation to the other items included in subsection (b), and contrasted to the nature and purpose of post-judgment interest, it becomes clear that the Legislature's exclusion of the latter was intentional. The common thread connecting the items listed in subsection (b) is that they are either elements of damages or claims or acts for which damages are recoverable. Post-judgment interest does not share that attribute, which explains why it was not included in the exclusions from the waiver of sovereign immunity.

Although pre-judgment interest ordinarily is not allowed in Maryland for bodily harm, emotional distress, or

other types of damages not capable of being precisely measured, *see Pine Street Trading v. Farrell Lines,* 278 Md. 363, 377, 364 A.2d 1103, 1112 (1976), we stated in *I.W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 16–17, 344 A.2d 65, 75 (1975):

"Generally, interest is not an inseparable and invariable incident of claims for money or unliquidated accounts, *City Pass. Rwy. Co. v. Sewell,* 37 Md. 443, 452 (1873), it is recoverable as a matter of right under contracts in writing to pay money on a day certain, such as bills of exchange or promissory notes, *Isle of Thye Land Co. v. Whisman,* 262 Md. 682, 708–09, 279 A.2d 484, 498 (1971); *Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp.,* [256 F.2d 946 (4th Cir. 1958)], *supra; Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc.,* 213 Md. 509, 516, 132 A.2d 582, 586 (1957); in actions on bonds, *Mullan Contracting Co. v. International Business Machs. Corp.,* 220 Md. 248, 262, 151 A.2d 906, 914 (1959); *Kasten Constr. Co. v. Anne Arundel County,* 262 Md. 482, 489–90, 278 A.2d 282, 286–87 (1971); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* in actions under contracts providing for the payment of interest, *Isle of Thye Land Co. v. Whisman, supra, see Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp., supra;* in cases where the money claimed has been actually used by the other party, *Charles County Broadcasting Co., Inc. v. Meares,* 270 Md. 321, 332, 311 A.2d 27, 34 (1973); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* and in cases upon sums payable as rent, *Eidelman v. Walker & Dunlop, Inc.,* 265 Md. 538, 545, 290 A.2d 780, 784 (1972). *See also Brown v. Bradshaw,* 245 Md. 524, 539, 226 A.2d 565, 573 (1967)."

In those instances in which pre-judgment interest is allowed as a matter of course, it is because "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *First Virginia Bank v. Settles,* 322 Md. 555, 564, 588 A.2d 803, 807 (1991); *see also David Sloane, Inc. v. Stanley G. House &*

*Associates, Inc.,* 311 Md. 36, 53–4, 532 A.2d 694, 702–3 (1987). *See Atlantic States Constr. Co. v. Drummond & Co.,* 251 Md. 77, 85, 246 A.2d 251, 255 (1968); *Affiliated Distillers Brands Corp. v. R.W.L.Wine & Liquor Co.,* 213 Md. 509, 519, 132 A.2d 582, 586 (1957). And when allowed in those instances, the interest serves a compensatory function, to compensate an injured party for the harm that he or she suffered or prospectively will suffer, *see Owens–Illinois, Inc. v. Armstrong,* 326 Md. 107, 127, 604 A.2d 47, 56 (1992), and to make the plaintiff whole. *See Huppman v. Tighe,* 100 Md.App. 655, 670, 642 A.2d 309, 317 (1994); *Exxon Corp. v. Yarema,* 69 Md.App. 124, 137, 516 A.2d 990, 997 (1986). Consequently, pre-judgment interest is in the nature of an element of damages. *See Austin v. State,* 831 S.W.2d 789, 792 (Tenn.App.1991) (It is a part of "the pecuniary consequences which the law imposes for the breach of some duty or violation of some right").

Post-judgment interest, on the other hand, serves to "compensate the judgment creditor for the loss of the monies due and owing to him by the judgment debtor from the time the judgment is entered until it is paid." *Mayor and City Council of Baltimore v. Kelso Corp.,* 294 Md. 267, 271, 449 A.2d 406, 408 (1982). Otherwise stated, it "compensate[s] the successful suitor for the . . . loss of the use of the monies represented by the judgment in its favor, and the loss of income thereon, between the time of the entry of the judgment . . .-when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment." *I.W. Berman Properties v. Porter Bros., Inc.,* 276 Md. 1, 24, 344 A.2d 65, 79 (1975). Thus, there is a "distinct difference between pre-judgment interest which is a part of damages and interest on a judgment which does not constitute part of the damages." *Austin, supra,* 831 S.W.2d at 791.

As we have already observed, in Maryland, there has never been any attempt to treat the State differently from other litigants insofar as the payment of post-judgment interest is concerned. The Supreme Court of Minnesota has articulated a rationale for not doing so: "[r]equiring the State to reim-

burse the expenses of litigation and to pay interest on the amount for which it has been adjudged liable imposes on the State the same financial pressure which encourages private persons to avoid litigation and to pay judgments promptly." *Lienhard v. State*, 431 N.W.2d 861, 866 (Minn.1988).[17] *See also University of Texas Medical Branch v. York*, 808 S.W.2d 106, 112 (Tex.App.1991), *rev'd on other grounds*, 871 S.W.2d 175 ( 1994), in which the court, addressing a situation similar to the one under discussion, explained:

"[P]ost judgment interest is compensation allowed by law for the use of detention of money computed from the date of the rendition of a judgment until the date of its satisfaction. Interest as interest in such a situation is an incident of debt, and to be payable it requires an obligation binding on one person to pay money to another. Once the debt is established, unless there is an agreement as to when it is to be satisfied, the obligation to pay is immediate. Failure of the obligor to promptly pay deprives the obligee of the right to invest and earn interest on his money. The obligor benefits from the use of the money while the obligee does not. Thus, the award of interest on money owed is the only compensation available to the obligee who cannot enjoy the benefits of his own money.

The Texas Tort Claims Act limits the amount of damages one can recover from a governmental unit for a personal injury claim. Once the claim is proven and damages established, so long as the damages do not exceed the maximum authorized by statute, the obligation to pay is the same as that of any other debtor. The Act does not permit the

---

**17.** The court in that case concluded that the limits on liability in the Minnesota Tort Claims Act did not apply to post-judgment interest. That provision in Minn.Stat. (1978), Subdivision 4, § 3.736 reads in relevant part:

"The total liability of the state and its employees acting within the scope of their employment on any tort claim shall not exceed:

"(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case.

"(b) $500,000 for any number of claims arising out of a single occurrence. ...."

sovereign to withhold payment once the debt is established. . . . To deny this request [for post judgment interest] is to allow [the State] to keep control of the money for however long it desires, depriving the [plaintiffs], who have no recourse, the benefit and use of what is now their money. In other words, there is no incentive for [the state] to pay the [plaintiffs] the money that belongs to them. Because post-judgment interest is not considered to be damages, it does not affect the statutory amount controlled by the Tort Claims Act. Thus, we can find no reason why post judgment interest should not be awarded." ( citations omitted).

We agree with these authorities. Had the State paid the judgment on the date the verdict was rendered, its responsibility for the payment of interest would not have arisen. *See King v. State Roads Com'n of State Highway Admin.*, 298 Md. 80, 85, 467 A.2d 1032, 1034 (1983); *Cook v. Toney*, 245 Md. 42, 224 A.2d 857 (1966) ( A litigant is entitled to "post-judgment interest on the award at the legal rate from the date of entry of the judgment . . . to the date the award is actually paid"). *See also I.W. Berman Properties v. Porter Bros. Inc.*, 276 Md. at 21, 344 A.2d at 77. Having failed to do so, it must be held accountable for the payment of post-judgment interest. Otherwise, the State would be treated differently than other debtors, even though the applicable Rule and the statutes that preceded it drew no such distinction.

Other States have considered the issue we address today,— whether, where there is both a statute waiving the defense of sovereign immunity as to certain causes of action and a statute imposing interest on judgments, the Legislature intended that the state pay post-judgment interest, reaching different results. The court in *Wilmer v. Board of County Commissioners of Leavenworth Kansas*, 916 F.Supp. 1079, 1080–81 (D. Kan.1996), noting that the Kansas Tort Claims Act [18] explicitly

---

**18.** The statute at issue in that case was the Kansas Tort Claims Act, K.S.A. 75–6105, which provides in relevant part:

"(a) Subject to the provisions of K.S.A. 75–6111 and amendments thereto, the liability for claims within the scope of this act shall not

prohibited the payment of pre-judgment interest over its statutory cap, while failing to address post-judgment interest, held that the latter was not subject to the statutory cap. *See id.* From the fact that the statute providing for an award of post-judgment interest was enacted six years before the Tort Claims Act, it concluded, "if the legislature had intended for the cap to include within its limits interest..., it had an opportunity to draft the statute to reflect that intention." *See id.* at 1080. Similarly, in *Lienhard v. State,* 431 N.W.2d 861, 862 (1988), the Minnesota Supreme Court held that post-judgment interest could be paid above the State's cap on tort damages, embodied in Minnesota's Tort Claims statute. In that case, the issue was whether the cap encompassed post-judgment interest, when the statute waiving the State's sovereign immunity contained no specific reference to the payment of interest. The Court was persuaded by the distinction drawn between pre-judgment and post-judgment interest, the former being an element of damages and the latter being "compensation for the loss of the use of money as a result of the nonpayment of a liquidated sum, for which liability has already been determined, not compensation for the injury giving rise to liability." *Id.* at 865. Using similar reasoning, the Tennessee Court of Appeals concluded that a cap placed on a tort litigant's recovery by a Tennessee statute limiting the State's liability for tort claims [19] applied only to damages

---

exceed $500,000 for any number of claims arising out of a single occurrence or accident.

\* \* \*

"(c) A governmental entity shall not be liable for punitive or exemplary damages or for interest prior to judgment. ..."

**19.** The Tennessee Code Annotated (Supp.1991), § 9–8–307, as relevant, provides:

\* \* \*

"(d) The state will be liable for actual damages only. No award shall be made unless the facts found by the commission would entitle the claimant to a judgment in an action at law if the state had been a private individual. The state will not be liable for punitive damages and the costs of litigation other than court costs. The state will not be liable for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain.... If

awarded and not to post-judgment interest, awarded pursuant to a general statute imposing interest on judgments. *See Austin v. State,* 831 S.W.2d 789, 791 (Tenn.App.1991). Examining the legislative history of the statute and noting that the Tennessee Legislature limited the award of "damages," rather than "interest," the court opined that since post-judgment interest does not constitute "damages," it is not subject to the cap on the award of damages. *See id* at 792. *See also University of Texas Medical Branch v. York, supra,* 808 S.W.2d at 112 (where, under the Texas Tort Claims Act, pre-judgment interest is recoverable as an element of damages, award of post-judgment interest in a personal injury case is not limited by the cap on damages, it not being an element of damages.); *Montgomery Hospital v. Medical Professional Liability Catastrophe Loss Fund,* 668 A.2d 221, 223 (1995) ("a Commonwealth party is liable for post-judgment interest even though payment of such interest would require the Commonwealth party to pay in excess of the statutory limit"). *See also Folz v. State,* 115 N.M. 639, 857 P.2d 39, 42 (App.1993) (noting that the post-judgment interest statute predated the Tort Claims Act, which prohibited pre-judgment interest, leading to the conclusion that the Legislature intended to award post-judgment interest); *See Gribben v. Kirk,* 197 W.Va. 20, 475 S.E.2d 20, 26 (1996) (same).

The Supreme Judicial Court of Massachusetts has reached a contrary result in *Onofrio v. Dept. of Mental Health,* 411 Mass. 657, 584 N.E.2d 619 (1992). There, the Court reasoned that because "the Legislature provided for the recovery of damages from [the State of Massachusetts]... does not lead necessarily to the conclusion that the statute allows for the recovery of costs as well, because costs are an ancillary matter

---

the claimant is successful with any claim filed with the claims commission after January 1, 1985, the state shall pay such interest as the commissioner may determine to be proper, not exceeding the legal rate as provided in § 47–14–121....

"(e) For causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence...."

to the underlying concern of liability for damages." *Id.* at 620 (quoting *Ware v. Commonwealth,* 409 Mass. 89, 564 N.E.2d 998, 999 (1981)). For similar reasons, the Supreme Court of Rhode Island has also declined to award post-judgment interest, noting that the Legislature had explicitly authorized only the award of damages, which did not include the payment of post or pre-judgment interest. *See Mulvaney v. Napolitano,* 671 A.2d 312, 313 (R.I.1995); *see also Belletini v. Oklahoma,* 920 P.2d 1067, 1071 (Okla.Ct.App.1996). We do not find the reasoning of these courts to be persuasive.

### III.

We continue to recognize that immunity from suit is one of the highest attributes of sovereignty enjoyed by the State, *see Dunne v. State,* 162 Md. 274, 288–89, 159 A. 751, 757 *appeal dismissed* and *cert. denied,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932), and that it precludes a litigant from asserting an otherwise meritorious cause of action against the State or one of its agencies, unless the immunity has been expressly waived.[20] *See Charles E. Brohawn & Brothers, Inc. v. Board of Trustees of Chesapeake College,* 269 Md. 164, 165–66, 304 A.2d 819, 820 (1973); *Bd. of Education v. Alcrymat Corp.,* 258 Md. 508, 516, 266 A.2d 349, 353 (1970); *Dunne v. State,* 162 Md. 274, 280, 159 A. 751, 753 (1932). We have said, "the doctrine involves important and far-reaching legislative and executive responsibilities and entails sound public policy . . .," and that it " belongs to the State by reason of her prerogative as a sovereign." *Austin v. City of Baltimore,* 286 Md. 51, 57–8, 405 A.2d 255, 258 (1979) (quoting *State v. B. & O. R.R. Co.,* 34 Md. 344, 374 (1871)). The ancient doctrine, which is still firmly embedded in the law of Maryland, *see Katz v. Washington Suburban Sanitary Commission,* 284 Md. 503, 507, 397 A.2d 1027, 1030 (1979), serves many purposes.

---

**20.** Several rationales have been offered over time to justify the doctrine, including the idea the crown can do no wrong, the impracticality of suing the sovereign, the preservation of public assets, and the government's need for efficiency and control. *See Sovereign Immunity from Statutes of Limitation in Maryland* 46 Md. L.Rev. 408, 409–11 (1987).

Today, it continues to protect the State "from burdensome interference with its governmental functions and [preserve] its control over State agencies and funds." *Katz v. Washington Suburban Sanitary Commission,* 284 Md. at 507, 397 A.2d at 1030.

We have recognized, and continue to note that, in Maryland, the doctrine of sovereign immunity is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary implication. *See Godwin v. County Comm'rs of St. Mary's County,* 256 Md. 326, 334, 260 A.2d 295, 299 (1970). In fact,

"The decisions in this state go further than holding that without legislative sanction an arm of the state government . . . may not be sued, and are to the effect that, even though there is a legislative authorization to sue, such suits may not be maintained unless funds are available or may be made available by the agency itself for the purpose of paying the claim for damages that may be established by the suit. . . .

"So it is established that neither in contract nor tort can a suit be maintained against a government agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it."

*University of Maryland v. Maas,* 173 Md. 554, 558–59, 197 A. 123, 125 (1938). Further, we held in *Bd. of Trustees of Howard Community College v. John K. Ruff, Inc.,* 278 Md. 580, 590, 366 A.2d 360, 366 (1976), "that when the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations." Moreover, we have stated "[i]f an action is brought for a money judgment in contract or in tort against the State or an agency of the State without the State's consent, actual or implied, it must be

defended on the ground of sovereign immunity, which cannot be waived unless funds had been appropriated for the purpose or the agency can provide funds by taxation ...." *Bd. of Trustees of Howard Community College v. John K. Ruff, Inc.* 278 Md. at 584, 366 A.2d at 362 (Md.1976) (quoting *American Structures v. City of Baltimore,* 278 Md. 356, 359, 364 A.2d 55, 56 (1976)).

Our decision today in no manner detracts from these precedents. Rather, we are cognizant of the fact that the Legislature did not choose to exclude expressly the payment of post-judgment interest from the waiver of sovereign immunity, as it has done with respect to pre-judgment interest. In any event, we do not believe that the goals of sovereign immunity are frustrated by requiring the State to pay post-judgment interest, since, as we have explained, such interest is not a measure of damages.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*