909 A.2d 1101

Charles MAGNETTI

v.

UNIVERSITY OF MARYLAND, et al.

No. 2492 Sept. Term, 2005.

Court of Special Appeals of Maryland.

Oct. 27, 2006.

Reconsideration Denied Jan. 11, 2007.

280

Michael Wein, Greenbelt, MD, for Appellant.

Thomas Faulk (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, MD, for Appellees.

Panel: JAMES R. EYLER, ADKINS and MEREDITH, JJ.

JAMES R. EYLER, Judge.

Appellant, Charles Magnetti, filed a complaint, later amended,[1] in the Circuit Court for Prince Georges County, against the University of Maryland, College Park, the University's

---

1. The amendment is not material to the issues raised on appeal.

College of Arts and Humanities, and the Director of the University's Professional Writing Program, Dr. Michael Marcuse, appellees,[2] alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking specific performance, stemming from the termination of his employment in May or June of 2002.

Appellees filed a motion to dismiss, asserting that governmental immunity prevented appellant from maintaining suit, as he had failed to file his claim within one year, as required by Maryland Code (2004 Repl.Vol.), § 12–202 of the State Government Article ("S.G."). The Circuit Court for Prince George's County agreed with appellees, applying S.G. § 12–201 (waiving the State's governmental immunity for contract actions) and S.G. § 12–202 and dismissing the appellant's complaint with prejudice on the ground of sovereign immunity.

On appeal, appellant alleges that the circuit court wrongly dismissed his claim, as Maryland Code (2006 Repl.Vol.), § 12–104 of the Education Article ("Ed."), waived the University System's governmental immunity through its "sue and be sued" provision. Appellant observes that the one year time limitation in S.G. § 12–202 for bringing suit against appellees under S.G. § 12–201, does not apply to the waiver of immunity under the Education Article. For the reasons set forth below, we shall affirm the decision of the circuit court.

———

**2.** There is some language in the complaint indicating that appellant may have intended to name the President of the University, Dr. Clayton D. Mote, as an additional defendant. Dr. Mote is not named as a defendant in the caption, however, but is described as the person on whom to serve process directed at the University of Maryland, College Park. The complaint contains counts based solely on contract, and appellant alleges that his contract was with the Professional Writing Program and the University of Maryland, College Park, not with individuals. Our interpretation of the complaint is that Dr. Mote was not named as a defendant, appellees interpreted it the same way, and appellant has not challenged that interpretation.

The University System of Maryland is governed by the Board of Regents. The parties treat the named appellees as tantamount to the Board of Regents. We shall do the same.

## Standard of Review

We note at the outset that, as this case reached us upon the grant of a motion to dismiss, "we are referring not to evidence but only to allegations. There has yet been no evidentiary hearing...." *Simms v. Constantine*, 113 Md.App. 291, 294, 688 A.2d 1 (1997). We must presume all well pleaded facts in the complaint, and any inferences that can be drawn therefrom, to be true. *Fioretti v. Maryland State Bd. of Dental Exam'rs*, 351 Md. 66, 72, 716 A.2d 258 (1998). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Simms*, 113 Md.App. at 296, 688 A.2d 1. "The proper standard for reviewing the grant of a motion to dismiss is whether the ... court was legally correct." *Fioretti*, 351 Md. at 71, 716 A.2d 258.

## Factual Background

We summarize the facts, as alleged by appellant. Prior to 2002, appellant was employed for nineteen years as an instructor and lecturer with the Professional Writing Department of the University of Maryland, College Park. Appellant received high marks in peer and student evaluations, and twice won the honor of teacher of the year. The Professional Writing Program does not use a tenure system with longtime professors, but instead uses a tiered personnel system. Appellant was informed that he was a member of the highest tier, known as "Core Faculty." According to appellant, "Core Faculty members are in a bilateral contract with the Professional Writing Program ... whereby they are assured of continual teaching of at least three sections per semester, as long as they continue working with the professional writing program."

Without any good cause being stated, the appellant was informed in or around June of 2002 that his contract would not be reissued for the upcoming semester. Appellant's subsequent attempts to reapply with the Professional Writing Program were similarly rebuffed without good cause. Appellant alleged that a physical handicap affecting his ability to walk,

Peripheral Artery Disorder, and appellant's outward appearance, such as wearing a beard and ponytail, played a determinative role in appellees' decision not to continue his employment.

At the motions hearing in circuit court, appellant's counsel expressly stated that, for purposes of the motion, the contract was in writing. That statement is consistent with the allegations in the complaint, and thus, we will read the complaint as alleging a written contract.

## Procedural History

■ After appellees failed to renew appellant's contract and denied his subsequent applications for re-employment, on June 13, 2005, appellant brought contract claims in circuit court alleging, in count one, breach of contract, in count two, breach of the implied covenant of good faith and fair dealing,[3] and in count three, seeking specific performance to enforce the parties' contract and allow appellant to continue as an instructor.

Thereafter, appellees filed a Md. Rule 2–322 motion to dismiss, alleging that appellant failed to state a claim upon which relief could be granted because the suit was barred by sovereign immunity, pursuant to S.G. § 12–201 and S.G. § 12–202. Those sections provide, in pertinent part:

§ 12–201: Except as otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an

---

**3.** As an aside, we note that Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing; the allegations making up such a claim should be pursued under a plaintiff's breach of contract claim. *See Baker v. Sun Co.,* 985 F.Supp. 609, 610 (D.Md.1997) ("Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing."); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.,* 190 F.Supp.2d 785, 794 (D.Md.2002) (finding that the duty of good faith and fair dealing "is merely part of an action for breach of contract"); *Mount Vernon Properties v. Branch Banking,* 170 Md.App. 457, 472, 907 A.2d 373 (2006).

official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee.

§ 12–202: A claim under this subtitle is barred unless the claimant files suit within 1 year ...

S.G. §§ 12–201–202.

Appellees argued that appellant had failed to file suit within the applicable one year period and, thus, could not maintain his claims.

Appellant responded that immunity was waived pursuant to Ed. § 12–104(a) and (b). The relevant portions of Ed. § 12–104 state:

(a) In addition to any other powers granted and duties imposed by this title, and subject to the provisions of Title 11 and any other restriction imposed by law by specific reference to the University System of Maryland ... the Board of Regents has the powers and duties set forth in this section.

(b) In addition to the powers set forth elsewhere in this title, the University may:

(3)Sue and be sued, complain, and defend in all courts.

Ed. § 12–104(a) and (b).

Appellant argued that a recent amendment to Ed. § 12–104, adding the language "by specific reference," made clear the Legislature's intent that no restriction be placed upon the power granted to the Board of Regents, unless it specifically referenced the University System. According to the appellant, S.G. § 12–202 was inoperative as applied to the appellees because it restricted the ability of the Board of Regents to be sued under S.G. § 12–201, but did not specifically reference the University System.

Appellant also alleged that Ed. § 12–104(b)(3)'s "sue or be sued" language waived governmental immunity, such that only the three year statute of limitations for ordinary contract claims was relevant. Because his contract claim was brought

within three years of the alleged breach of contract, appellant argued that the motion to dismiss should be denied.

At oral argument, the court did not find appellant's Ed. § 12–104 argument persuasive, noting that this "legislation ... was enacted ... for the purpose of providing that the authority of the Board of Regents ... may not be superseded by any state agency or office in certain management affairs except by a provision of law that specifically references the University System of Maryland," not for removing the application of S.G. § 12–202. Additionally, the court determined that, according to the ruling in *Stern v. Bd. of Regents*, 380 Md. 691, 846 A.2d 996 (2004), Ed. § 12–104(b)(3)'s "sue or be sued" provision did not waive sovereign immunity in this case. Because sovereign immunity had not been waived under Ed. § 12–104(b)(3), and because suit had not been filed within one year, as required by S.G. § 12–202, the court ruled that the complaint was barred by sovereign immunity and, thus, granted appellees' motion to dismiss.

## Contentions

Appellant contends that the circuit court erred in ruling that, pursuant to S.G. § 12–201 and S.G. § 12–202, the appellees were immune from contract causes of action filed more than one year after the alleged breach of contract. Appellant's arguments center on whether the 2004 amendment to Ed. § 12–104(a) effectively removed the appellees from the scope of S.G. § 12–202's one-year restriction on bringing suit, and whether sovereign immunity was waived through a provision of Ed. § 12–104(b)(3), which specifically states that the Board of Regents can "sue or be sued." For the reasons set forth below, we affirm the decision of the court.

## Governmental Immunity

If "a governmental agency or actor can, and does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern*, 380 Md. at 701, 846 A.2d 996. Sovereign immunity

protects the State government from excessive interference with governmental functions and preserves control over state funds. *Id.* (*citing Maryland State Highway Admin. v. Kim,* 353 Md. 313, 333, 726 A.2d 238 (1999)).

■ "There is no doubt ... that the Board is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity." *Id.* at 702, 846 A.2d 996. Thus, without a statutory waiver of sovereign immunity preventing the appellees from asserting the defense of sovereign immunity, appellant's claim cannot be maintained. Appellant argues that either Ed. § 12–104(b) or S.G. § 12–201 constituted that waiver of immunity, without the limitation contained in S.G. section § 12–202.

■ Ed. § 12–104(b), addressing the powers and duties of the Board of Regents, states that the Board of Regents may "sue or be sued." Such "sue or be sued" language does not, however, allow a party to obtain a money judgment against a governmental actor. Rather, obtaining a money judgment requires a two-part showing: first, that specific legislative authority for suits has been given, and second, that funds have been appropriated for the purpose of satisfying a money judgment or the agency has been empowered to provide such funds by taxation. *Univ. of Maryland v. Maas,* 173 Md. 554, 559, 197 A. 123 (1938). As stated in *Howard Cmty. Coll. v. John K. Ruff, Inc.*:

> [W]hen the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations. It does not necessarily follow, however, that a money judgment may therefore be obtained, even with respect to matters within the scope of the duties of the agency ... [A]n action for a money judgment may not be maintained unless funds had been appropriated for that purpose or the agency can provide funds by taxation.

278 Md. 580, 590, 366 A.2d 360 (1976)(emphasis added). Thus, "[i]t is clear that without a specific legislative waiver *and*

appropriation, or taxing power, sovereign immunity is applicable in respect to the state." *Stern*, 380 Md. at 701, 846 A.2d 996 (emphasis added).

The Court of Appeals recently examined the application of the *Maas* and *Ruff* test to Ed. § 12–104(b)(3). *Stern*, 380 Md. at 691, 846 A.2d 996. In that case, students of several member institutions of the University System of Maryland brought suit against the Board of Regents, alleging that a mid-year tuition increase constituted a breach of contract. When the Board of Regents defended on the ground of sovereign immunity, the students responded with several arguments, including an assertion that immunity had been waived through the "sue or be sued" provision of Ed. § 12–104(b)(3).

The students alleged that pursuant to *Frankel v. Bd. of Regents*, Ed. § 12–104(b) waived governmental immunity in all "actions concerning matters within the scope of the governmental agency's duties and obligations." *Stern*, 380 Md. at 712, 846 A.2d 996 (*quoting Frankel v. Bd. of Regents*, 361 Md. 298, 310, 761 A.2d 324 (2000) (internal quotation marks and citations omitted)). The students argued that the Board of Regents "has extensive powers, including the right to [e]xercise all the corporate powers granted Maryland corporations . . . and the right to enter into contracts of any kind," and therefore was acting within the scope of its official duties in ordering the tuition increase. *Id.* at 712, 846 A.2d 996 (*citing* Ed. § 12–104(b)(1) and Ed. § 12–104(b)(5))(internal quotations omitted). Thus, according to the students, the Board had waived sovereign immunity pursuant to the sue or be sued provision. *Id.*

The Court refused to read the *Frankel* holding so broadly. The Court found that the waiver of immunity for actions done pursuant to the Board's duties and obligations was still restricted by the second element of the *Ruff* test, requiring that funds be specifically appropriated to satisfy a judgment or that the state agency have the taxing power to raise money to satisfy judgments. *Id.* at 714, 846 A.2d 996.

Examining the second prong of the *Maas* and *Ruff* test in the context of *Stern,* the Court found it "clear that no statutory authority exists to authorize the Board of Regents to levy a tax for the purpose of repaying mid-year tuition increases." *Id.* at 715, 846 A.2d 996. The Court thus reviewed whether money had been appropriated to pay money damages arising from claims under Ed. § 12–104(b)(3).

The Court stated that the

General Assembly is cognizant of how to specifically authorize the power to raise funds in satisfaction of the second prong of the ... *Ruff* test, as it has enacted a power to appropriate funds for the purpose of paying judgments arising from an express ... waiver of immunity in ... § 12–203 of the State Government Article.

*Id.*

S.G. § 12–203 states that "the Governor shall include in the budget bill money that is adequate to satisfy a final judgment" arising out of claims filed under the express waiver of immunity found within S.G. § 12–201. The Court found no such language in Title 12 of the Education Article for the appropriation of funds to satisfy claims brought under the alleged waiver provision of Ed. § 12–104(b)(3).

The Court then stated that the "appellants offer no evidence of whether, sufficient, or even any, funds were appropriated for the purpose of satisfying adverse judgments." *Id.* at 718, 846 A.2d 996. The students offered only a financial statement, which did not show "how the potential funds listed [were] to be appropriated or spent." *Id.* Finding that the students had failed to demonstrate appropriations or taxing authority to satisfy money judgments, the Court ruled that the "sue or be sued" language of Ed. § 12–104(b)(3) did not waive governmental immunity for the students' claims. The Court did not expressly decide whether Ed. § 12–104(b)(3)'s "sue or be sued" provision was a waiver of sovereign immunity, instead ruling only that the students had failed the second requirement in *Ruff. Id.* at 712, 846 A.2d 996.

Appellant has also argued that S.G. § 12–201 acts to waive immunity in the present case. While the potential waiver of immunity in Ed. § 12–104(b) will apply only in those instances when funding has been appropriated, S.G. §§ 12–201–203 are clearly applicable to the Board of Regents, as funding is legislatively appropriated in S.G. § 12–203 to satisfy any judgements obtained under this subtitle.

Thus, in two recent Court of Appeals decisions, the Court applied S.G. §§ 12–201–202 to determine whether the immunity of the Board of Regents had been waived. In *Stern*, although ultimately finding that the requirements of S.G. § 12–201 had not been met, the Court nevertheless implicitly held that S.G. § 12–201, when applicable, waived immunity.

The Court also applied S.G. § 12–201 in *Towson Univ. v. Conte*, 384 Md. 68, 862 A.2d 941 (2004), a case involving a factual situation similar to that of the present case. In *Conte*, the Director of Regional Economic Studies for Towson University was terminated and brought claims sounding in contract for wrongful discharge and breach of contract. *Id.* Most of the opinion is irrelevant to the outcome of the present case, but we do note that the Court applied S.G. § 12–202 in its waiver analysis. The Court found that the University had waived sovereign immunity because Conte's action was filed within the one year period required under S.G. § 12–202. *Id.* at 96, 862 A.2d 941.

S.G. § 12–201 was enacted in 1976, long after the legislature first stated that the Board of Regents could "sue or be sued." In the *Maas* decision, the Court noted:

[T]he University of Maryland under the Laws of 1812 chapter 159 was declared to be able in law to sue and be sued, plead and be impleaded, answer and be answered, in any Court or Courts, before any judge or judges, justice or justices within the State, and elsewhere, in all and all manner of suits, pleas, cases and demands of whatever kind, nature or form they be, and to do all and every other matter and thing hereby contemplated to be done, in as full and effectual a manner as any other person or persons, bodies

corporate or public in like cases may or can do. Thus was the University of Maryland by legislative enactments rendered liable to be sued, but even so, this does not fully satisfy the requirements of the rule because it is definitely alleged and clearly shown that the University of Maryland had only such funds as are appropriated for its use by the Legislature of Maryland, to be distributed by another arm of the state government, namely, the Comptroller and Treasurer of the State, for definite and limited purposes, nor has the University of Maryland power or authority, in itself, to raise moneys for the payment of damages. Therefore, this suit can no more be maintained against the appellant than suits can be maintained against the State Roads Commission.

*Maas,* 173 Md. at 560–61, 197 A. 123.

With the above precedents in mind, we examine the present case to determine whether either Ed. § 12–104(b)(3) or S.G. § 12–201 waived the Board of Regents' immunity in this case and, if so, whether S.G. 12–202 applies.

## Sovereign Immunity Under Ed. § 12–104(b)

As noted above, the Court in *Stern* did not decide the issue of whether Ed. § 12–104(b)'s "sue or be sued" language was a general waiver of sovereign immunity for any acts done within the scope of the Board of Regents' duties or obligations. *Stern,* 380 Md. at 712, 846 A.2d 996. The Court found only that the students who brought suit had failed to meet the second prong of the *Ruff* test; the students did not demonstrate that money had been appropriated for satisfying judgments resulting from the waiver of immunity under Ed. § 12–104(b)(3) or that the Board had taxing authority. *Id.* at 712, 846 A.2d 996.

Like the Court in *Stern,* we find it "clear that no statutory authority exists to authorize the Board of Regents to levy a tax" for the purposes of satisfying this judgment. *Id.* at 715, 846 A.2d 996. Thus, unless funds were appropriated to pay money damages arising from claims under Ed. § 12–104(b)(3), sovereign immunity was not waived.

As the Court in *Stern* noted, the General Assembly understands how to specifically mandate the appropriation of funds to satisfy the second prong of the *Ruff* test. *Id.* In waiving sovereign immunity under Title 12 of the State Government Article for contract actions, the General Assembly included section S.G. § 12–203, which called for the appropriation of funds to satisfy judgments obtained under this subtitle. There is no similar language, within Title 12 of the Education Article, for the appropriation of funds to satisfy claims brought under the alleged waiver provision of Ed. § 12–104(b)(3), that is applicable to this case.[4]

Additionally, like the students in *Stern*, appellant has neither alleged nor proffered any facts indicating that funds were appropriated for the purpose of satisfying adverse judgments. While *Stern* was decided on summary judgment, we can decide the issue in this case on a motion to dismiss. In circuit court, appellant filed a written opposition to appellees' motion to dismiss, but, in it, simply referred to the additional allegations in the amended complaint which, as we have already indicated, are not material to the arguments raised on appeal. At the hearing, appellant did not argue that there were factual issues that required discovery; rather, appellant argued the immunity issues as questions of law.

On appeal, appellant points (1) to the size of the University's budget, arguing that, given the enormous amount of money within the University's budget, it clearly is able to pay any judgment awarded and (2) to Ed. § 12–104(b)(8) and 12–104(e), which empower the Board of Regents to "borrow money from any source" and "[a]pply for, accept, and spend

---

4. Ed. § 13–207 waives sovereign immunity for certain types of employee grievance actions brought by "classified employees." Unlike Ed. § 12–104(b), Ed. § 13–207 specifically includes a provision calling for the Governor to appropriate funding for the satisfaction of judgments obtained under this waiver. In circuit court, in his amended complaint, appellant alleged that Ed. 13–207 was applicable. On appeal, appellant presents no argument that he was a classified employee or that Ed. § 13–207 is applicable.

any gift or grant from the federal government, any foundation, or any other person."

As in *Stern,* however, such an argument fails to account for how the "funds listed are to be appropriated or spent." *Stern,* 380 Md. at 718, 846 A.2d 996. The second prong of *Ruff* requires that money be specifically appropriated for the satisfaction of judgments. Governmental immunity protects state actors from excessive interference and preserves control over state funds. *Stern,* 380 Md. at 701, 846 A.2d 996 (*citing Kim,* 353 Md. at 333, 726 A.2d 238). Even if we took judicial notice that the University System is supported by large sums of money, it also has countless debts and obligations. Ed. § 12–104(b) did not effect a waiver of governmental immunity under the circumstances of this case.

## Application of S.G. § 12–202

In addition to our conclusion that Ed. § 12–104(b) has not waived immunity for appellant's claim, we also conclude that, in any event, appellant's claim is barred by S.G. § 12–202. According to S.G. § 12–202, immunity is only waived pursuant to S.G. § 12–201 if a party's claim is filed within one year from the alleged breach of contract.

It appears from the text of appellant's complaint that the alleged breach occurred in June, 2002. Regardless, the parties agree, for purposes of their arguments, that appellant's complaint was not filed within the one year period contained in S.G. 12–202.

As described above, however, appellant contends that S.G. § 12–201 did in fact waive sovereign immunity in this case. According to appellant, Ed. § 12–104(a) makes S.G. § 12–202 inapplicable to appellees because it states that "the Board of Regents has the powers and duties set forth" in Ed. § 12–104(b) "subject ... to any other restriction imposed by law by specific reference to the University System of Maryland." Thus, in appellant's view, S.G. § 12–202 limits the waiver of sovereign immunity under S.G. § 12–201 without any specific reference to the University System of Maryland, and, there-

fore, is not enforceable as a restriction on the Board of Regents' ability to "be sued" under Ed. § 12–104(b)(3).

 Appellant attempts to buttress his argument by pointing to an amendment to Ed. § 12–104(a), which became effective on July 1, 2004. Prior to this change, Ed. § 12–104(a) stated that "the Board of Regents has the powers and duties set forth" in Ed. § 12–104(b), "subject to . . . any other restriction expressly imposed by law." The 2004 amendment modified Ed. § 12–104(a) by deleting the word "expressly" and adding the language "by specific reference to the University System of Maryland." [5]

The plain language of the provisions at issue leads us to the conclusion that Ed. § 12–104(a) does not affect the application of S.G. § 12–202. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186 (2005) (internal citation omitted). Additionally, we emphasize that

---

5. Appellant argued at the hearing below and in his initial brief that the amendment to § 12–104 was directed at the decision in the *Stern* case. Appellant appears to concede in his reply brief that "although the facts underlying the Stern decision . . . were well-known and publicized in the media, it is not necessarily the case that it was Stern that was the direct reason for the change in § 12–104." We agree that Stern did not motivate the change in § 12–104. *Stern* found S.G. § 12–201 inapplicable not because of a failure to file within the one year limitation dictated by S.G. § 12–202, but rather because S.G. § 12–201 only waived sovereign immunity for executed written contracts, a requirement not met by the students in *Stern*. 380 Md. at 720, 846 A.2d 996. Additionally, Senate Bill 738, containing the proposed amendment, was first read on February 6, 2004, two months prior to the date on which the *Stern* opinion was issued, April 12, 2004.

Moreover, Bill 738's stated purpose was "providing that the authority of the Board of Regents of the University System of Maryland may not be superseded by any State agency or office in certain management affairs except by a provision of law that specifically references the University System of Maryland." This purpose is clearly not targeted at removing the applicability of the sovereign immunity provisions of Title 12 of the State Government Article but rather at defining the relationship between the Board of Regents and other state agencies.

courts must "construe legislative dilution of governmental immunity narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat." *Stern,* 380 Md. at 720, 846 A.2d 996.

Under no reasonable reading of the relevant statutes would S.G. § 12–202 constitute a restriction made invalid under Ed. § 12–104(a). To restate the pertinent portions of Ed. § 12–104(a), "the Board of Regents has the powers and duties set forth" in Ed. § 12–104(b), "subject to . . . any other restriction imposed by law by specific reference to the University System of Maryland." This provision aims to limit the restrictions placed upon the powers given the Board of Regents in Ed. § 12–104(b). S.G. § 12–202 by its plain language, however, acts as a restriction upon third parties, not the Board.

S.G. § 12–202 states that "a claim . . . is barred unless the *claimant* files suit within 1 year . . . of the date on which the claim arose." (emphasis added). This provision acts directly on the party wishing to bring the suit, limiting the time period in which the party must act on its claim. No restriction is placed upon the Board, as the power to satisfy S.G. § 12–202 rests solely in the hands of the third party bringing suit.

Appellant has argued that, because this one year limitation is an invalid restriction upon the Board of Regents' ability to sue or be sued, only the three year statute of limitations applicable to civil actions defines the time period in which his claim should have been filed. Maryland Code (2002 Repl. Vol.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J."). Under appellant's reasoning, however, we could not apply this statute of limitations to suits against the Board either. The statutory language of C.J. § 5–101 makes no specific reference to the University System of Maryland or the Board of Regents, and would therefore constitute an invalid restriction on the Board of Regents' ability to "sue or be sued." Based on appellant's interpretation of Ed. § 12–104, we would be hard pressed to apply any procedural limitation to a suit against the Board of Regents.

Thus, we hold that Ed. § 12–104(a) does not negate the time limitation for bringing suit under S.G. § 12–202. This conclusion is consistent with the Court of Appeals' decision in *Conte*, as the Court in that case applied the time limitation of S.G. § 12–202 to a similar factual situation involving a common law breach of contract claim, and it did so after the effective date of the amendment to Ed. § 12–104(a).

Therefore, because the face of appellant's complaint demonstrates that he did not file within the time requirements stated in S.G. § 12–202 for bringing a claim under the S.G. § 12–201 waiver of sovereign immunity, the circuit court's dismissal of this case was correct as a matter of law.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**