937 A.2d 219

Charles MAGNETTI

v.

UNIVERSITY OF MARYLAND, College Park, et al.

No. 8, Sept. Term, 2007.

Court of Appeals of Maryland.

Dec. 13, 2007.

Michael Wein (Law Offices of Michael Wein, Greenbelt), on brief, for petitioner.

Thomas Faulk, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondents.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

This matter arises from a wrongful termination action filed in the Circuit Court for Prince George's County by the petitioner Charles Magnetti, a state employee, against the University of Maryland, College Park, the College of Art and Humanities, and Dr. Michael Marcuse—the Director of the Professional Writing Program, a program within the College of Arts and Humanities (collectively, "the University"), the respondents. In June 2002, Dr. Marcuse informed Magnetti that his teaching contract with the Professional Writing Program would not be renewed for the upcoming Fall 2002 semester. Magnetti alleges that Dr. Marcuse did not provide him with an explanation for his termination. Magnetti's subsequent attempts at reapplying to the Professional Writing Program were rebuffed by Dr. Marcuse.

The Circuit Court, on a motion by the University, dismissed Magnetti's complaint as barred by the doctrine of sovereign immunity. The Circuit Court explained that Magnetti had failed to file his complaint within one year of the accrual date of his claim; therefore, he was unable to effectuate the statutory waiver of the University's sovereign immunity. Thereafter, Magnetti filed a timely appeal to the Court of Special Appeals, which affirmed the Circuit Court's dismissal of Magnetti's complaint. *Magnetti v. University of Maryland*, 171 Md.App. 279, 909 A.2d 1101 (2006). On April 11, 2007, we granted *certiorari*, *Magnetti v. University of Maryland*, 398 Md. 314, 920 A.2d 1058 (2007), to review the following question, which we have distilled from the three questions presented in Magnetti's petition for writ of certiorari: [1]

---

1. In his petition, Magnetti presents the following questions for our review:

Did the Circuit Court err in concluding that Md.Code (1984, 2004 Repl.Vol.), § 12–202 of the State Government Article applied to bar Magnetti's contract action against the University?

We answer that question in the negative and affirm the judgment of the Court of Special Appeals.

## I.

### Factual Background

Because this appeal arises from the Circuit Court's grant of the University's motion to dismiss, we assume "the truth of all well-pleaded relevant and material facts ... as well as all inferences which can be reasonably drawn from the plead-

---

1. Whether the trial court erred in finding that the University System of Maryland has sovereign immunity from contract causes of action filed more than one year after the breach of contract (instead of three years) when: (1) the specific applicable statute of Md. Education Code Ann. § 12–104 and its 2004 amendments plainly require that any restrictions to § 12–104 be "by specific reference to the University System of Maryland"; (2) that to countenance the interpretation of the Court of Special Appeals would turn Md. Edu. § 12–104(i) into surplusage (specifically incorporating the Maryland Tort Claims Act as falling under the statute, with no incorporation of the corollary statute on contract causes of action under State Gov. § 12–202); and (3) that as part of its increased sovereignty from the State of Maryland and exercising its corporate powers, the University System of Maryland can without limitation under § 12–104, "sue and be sued" and "enter into contracts of any kind."

2. Whether the Court of Special Appeals erred in determining that the *Maas* and *Ruff* test application is appropriately dealt with on a Motion to Dismiss based on a different issue and be fore the onset of discovery (to the apparent contradiction of this Court's decision in *Ruff*), and if so, what is the proper procedural method for trial courts to review the ability of state agencies to afford their own breaches of contract.

3. Whether *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938) should be overruled or distinguished based on the no longer relevant or factual policy rationales underlying *Maas* (which took place during the Great Depression) and today provides a legal fiction in particular with respect to the University System of Maryland which is a billion dollar institution that can, wholly independent of State involvement, raise significant money on their own to pay for their breaches of contract.

ings." *Odyniec v. Schneider*, 322 Md. 520, 525, 588 A.2d 786, 788 (1991).

It is alleged that until June 2002, Magnetti had been employed as an instructor and lecturer in the Professional Writing Program for nineteen years. Magnetti primarily taught legal writing courses; however, during his tenure at the University, Magnetti had come to teach every professional writing course offered to students. For at least the last ten years of his employment, Magnetti usually taught at least three courses a semester.

In the performance of his duties, Magnetti received high marks in both peer and student evaluations. He was nominated as teacher of the year four times during his tenure at the University, winning the honor in 1995 and 1996. At some point during his employment with the University, Magnetti was notified that based on his longevity with the Professional Writing Program, he was classified as a member of the "Core Faculty," the highest tier in the Professional Writing Program's personnel system. While the Professional Writing Program did not sub scribe to the traditional tenure system used in many universities, in granting such designation, the Professional Writing Program guaranteed designated faculty members a continuous teaching load of at least three sections/classes per semester as long as they were continuously employed with the Professional Writing Program.

In June 2002, allegedly without articulating the basis, Dr. Marcuse notified Magnetti that his contract with the Professional Writing Program would not be renewed for the upcoming Fall 2002 semester. Magnetti made subsequent attempts to reapply with the Professional Writing Program; however, such attempts were rebuffed by Dr. Marcuse.

More than three years later, on June 13, 2005, Magnetti filed a complaint in the Circuit Court for Prince George's County alleging breach of contract and breach of the implied covenant of good faith and fair dealing and seeking specific performance to enforce the parties' contract. Magnetti requested $300,000 in compensatory damages and that the Uni-

versity "be ordered to hire [Magnetti] to his previous employment position" with the Professional Writing Program. Magnetti alleged that he was dismissed because of a physical handicap that affects his ability to walk—Peripheral Artery Disorder—and because of his outward appearance, as he wears a beard and a ponytail.

On September 14, 2005, the University filed "Defendants' Motion to Dismiss," arguing that Magnetti's complaint failed to state a claim upon which relief could be granted because sovereign immunity barred Magnetti's suit. Specifically, the University argued that Magnetti filed his lawsuit some three years after his termination, well beyond the one-year period set forth in Md.Code (1984, 2004 Repl.Vol.), § 12–202 of the State Government Article ("S.G.") as the condition precedent for the waiver of the University's sovereign immunity.

The Circuit Court held a hearing on the motion on December 23, 2005. At that hearing, Magnetti argued that the University's sovereign immunity had been waived pursuant to Md.Code (1978, 2006 Repl.Vol.), §§ 12–104(a) and (b)(3) of the Education Article ("Ed."). Specifically, Magnetti argued that a recent amendment to Ed. § 12–104(a), which added the language "by specific reference," clarified the General Assembly's intent that statutory restrictions on powers granted to the Board of Regents must specifically reference the University System to be operable. According to Magnetti, S.G. § 12–202 could not then apply to the University because it served as a restriction on the ability of the Board of Regents to be sued under S.G. § 12–201 and the statutory language used in S.G. § 12–202 did not specifically reference the University System. Magnetti contended that because the provisions of Ed. § 12–104 applied to waive the University's sovereign immunity, only the three-year statute of limitations for general contract claims was relevant to the proceedings.

The Circuit Court dismissed the complaint with prejudice, stating:

Well, I believe the *Stern*[2] case is dispositive of the issue, and *Stern* does provide expressly, we hold the Board has sovereign immunity. There was an analysis as to whether the language sued and be sued was sufficient to enact a waiver of immunity. The [C]ourt concluded it was not. I believe the same is true here.

I disagree with Mr. Wein [Magnetti's counsel] that the 2004 amendments were a response to *Stern.* In fact, to the contrary, the *Stern* decision was issued [on] April 12, 2004. The legislation which ultimately was enacted was introduced in February of 2004 ... for the purpose of providing that the authority of the Board of Regents of the University System of Maryland [sic] may not be superceded by any state agency or office in certain management affairs except by a provision of law that specifically references the University System of Maryland.

In addition, it deleted a requirement as to the number of positions that may be created in the University System. If you look at it, it is expressly what it does. It was dealing with a different issue, that is the relationship between the University and other state agencies. It was an issue that predated the *Stern* decision. It doesn't at all respond to the issue of *Stern.*

Similarly, *Conte*[3] ... also deals with this issue. *Conte,* they clearly say, okay, you may be able to proceed because—in *Stern,* there was no written contract. So the provisions of the State Government Article that have been cited did not apply.

In *Conte* there was a written contract and the issue of timeliness, they said, well, there is no confusion but that he did file within the year required. That certainly was not the case here, that is ultimately the issue.

I find that there has been no broad waiver of immunity by the University of Maryland as analyzed by *Stern,* and no

---

**2.** *Stern v. Board of Regents,* 380 Md. 691, 846 A.2d 996 (2004).

**3.** *Towson University v. Conte,* 384 Md. 68, 862 A.2d 941 (2004).

broad waiver from the general powers and duties that are explicated in 12–104 of the Education Article, for the reasons stated in *Stern*.

I find there may be—there is a limited waiver for claims based on a breach of a written contract, which might permit such a common law contract claim to be filed, and that is in the State Government Article at 12–201, *et seq.*, but specifically 12–202 provides that such a claim need to be filed within one year after later of date [sic] in which the claim arose, or the completion of the contract.

Under any interpretation that would be May or June 2002. Thus the claim must have been filed no later than June of 2003 under any interpretation of that. It wasn't in fact filed until 2005. Therefore, because it wasn't timely filed it is barred by the limitations of sovereign immunity.

Magnetti filed a timely appeal to the Court of Special Appeals. On October 27, 2006, the Court of Special Appeals, in a reported opinion, affirmed the Circuit Court's dismissal of Magnetti's claims, holding that sovereign immunity barred the continuation of the action. *Magnetti*, 171 Md.App. at 297, 909 A.2d at 1111–12. The intermediate appellate court held that Ed. § 12–104(b)(3) did not alone waive the University's sovereign immunity for Magnetti's claim because, under this Court's analysis in *Stern v. Bd. of Regents*, 380 Md. 691, 701, 846 A.2d 996 (2004), the General Assembly had not appropriated specific funds to satisfy judgments awarded in suits brought pursuant to that particular subsection. *Magnetti*, 171 Md.App. at 288–89, 909 A.2d at 1106–07. The Court of Special Appeals also held that the amended language of Ed. § 12–104(a), requiring specific references to the University System in statutory restrictions on powers given to the Board of Regents, did not render the one-year limitations period of S.G. § 12–202 inoperable in contractual cases involving the University, because S.G. § 12–202 was not a restriction on the powers of the Board of Regents. *Magnetti*, 171 Md.App. at 295–96, 909 A.2d at 1111. The Court reasoned that the prescribed limitations period in S.G. § 12–202 acted as a restriction on Magnetti as it required him to file his claim

within the one-year period in order to effectuate a waiver of the University's sovereign immunity. *Id.* The Court concluded that because Magnetti filed his complaint outside the one-year period prescribed by S.G. § 12–202, he had failed to satisfy the condition precedent for the waiver of sovereign immunity under S.G. § 12–201. *Magnetti,* 171 Md.App. at 297, 909 A.2d at 1111–12. The Court held that Magnetti's claim could not go forward. *Magnetti,* 171 Md.App. at 297, 909 A.2d at 1112.

Magnetti filed a Motion for Reconsideration, which the Court of Special Appeals denied. Shortly thereafter, Magnetti filed a petition for writ of certiorari. On April 11, 2007, we granted *certiorari. Magnetti v. University of Maryland,* 398 Md. 314, 920 A.2d 1058 (2007).

## II.

## DISCUSSION

The doctrine of sovereign immunity is firmly embedded in Maryland law, long recognized as applicable in actions—contract, tort, or otherwise—against the State of Maryland, its officers, and its units. *Stern v. Board of Regents,* 380 Md. 691, 700, 846 A.2d 996, 1001 (2004) ("The doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives."); *Maryland State Highway Admin. v. Kim,* 353 Md. 313, 333, 726 A.2d 238, 248 (1999) ("We have recognized, and continue to note that, in Maryland, the doctrine of sovereign immunity is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary implication."); *ARA Health Servs. v. Dep't of Pub. Safety & Corr. Servs.,* 344 Md. 85, 91, 685 A.2d 435, 438 (1996) ("Maryland courts have long applied the doctrine of sovereign immunity in actions against the State."); *Condon v. State,* 332 Md. 481, 492, 632 A.2d 753, 758 (1993) ("The doctrine [of sovereign immunity] is applicable to the State's agencies and instrumen-

talities, unless the legislature has explicitly or by implication waived governmental immunity.").

 This doctrine prohibits suits against the State or its entities absent its consent. *Dep't of Natural Resources v. Welsh*, 308 Md. 54, 58–59, 521 A.2d 313, 315 (1986). As we stated in *Stern*, "when a governmental agency or actor can, and does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern*, 380 Md. at 701, 846 A.2d at 1001. Generally, we leave the questions of the general applicability and the scope of the doctrine to the General Assembly. *See Stern*, 380 Md. at 700, 846 A.2d at 1001 ("We have emphasized that 'the dilution of the doctrine' of sovereign immunity should not be accomplished by the judiciary, and that any direct or implied diminution of the doctrine falls within the authority of the General Assembly."); *Welsh*, 308 Md. at 59, 521 A.2d at 315 ("'The General Assembly must waive immunity 'either directly or by necessary implication.'"). *See also Austin v. City of Baltimore*, 286 Md. 51, 69–71, 405 A.2d 255, 264–266 (1979) (Eldridge, J., concurring in part, dissenting in part) (explaining the legislative origins of sovereign immunity in Maryland as a rationale for the Court's continual treatment of the doctrine "as a matter exclusively for the Legislature"). It is within our prerogative, however, to determine whether the doctrine applies in a specific case, which we do by asking two questions: "(1) whether the entity asserting immunity qualifies for the protection; and, if so, (2) whether the legislature has waived immunity either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." *ARA Health Services*, 344 Md. at 92, 685 A.2d at 438.

 It is well established that the University is considered to be an arm of the State Government for the purposes of the sovereign immunity doctrine. *See* Ed. § 12–102(a) [4]; *see also*

---

4. Ed. § 12–102(a) provides:

*Stern,* 380 Md. at 702, 846 A.2d at 1002; *Frankel v. Board of Regents,* 361 Md. 298, 301, 761 A.2d 324, 325 (2000); *Maas,* 173 Md. at 557, 197 A. at 124; *Pearson v. Murray,* 169 Md. 478, 482, 182 A. 590, 592 (1936). Because the University qualifies as a "unit" of the State for the purposes of sovereign immunity, we must discern the extent of the University's statutory waiver of that immunity. Without a statutory waiver of the University's sovereign immunity, Magnetti may not maintain his action against the University. The University acknowledges the waiver found in S.G. §§ 12–201 and 12–202, but asserts that Magnetti is barred from utilizing the waiver because he failed to satisfy the condition precedent of filing his contract claim within the prescribed one-year period. Magnetti claims, to the contrary, that a general waiver of the University's sovereign immunity exists in Ed. § 12–104(b). We agree with the University that S.G. §§ 12–201 and 12–202 apply as a waiver of the University's sovereign immunity and hold that sovereign immunity was not waived under the circumstances of this case. Therefore, Magnetti is not entitled to the claimed relief.

### A.

### The Application of S.G. §§ 12–201, 12–202 and Ed. § 12–104(a)

Magnetti contends that the Circuit Court erred in relying on S.G. §§ 12–201 and 12–202 in dismissing his complaint with prejudice. Specifically, Magnetti contends that the 2004 amendment to Ed. § 12–104(a) rendered the sovereign immunity provisions of S.G. §§ 12–201 and 12–202 inoperable to the University. Magnetti explains the 2004 amendment to Ed. § 12–104(a) "plainly stated what has readily existed since the

---

(a) *University as body corporate and politic.*—(1) There is a body corporate and politic known as the University System of Maryland. (2) The University is an instrumentality of the State and a public corporation.
(3) The University is an independent unit of State government.
(4) The exercise by the University of the powers conferred by this subtitle is the performance of an essential public function.

creation of the Board of Regents in the Autonomy Act, that barring specific reference to the University System of Maryland, that matters that conflict with or restrict the Board of Regents' powers and duties, are not applicable" to the University. He then reasons that S.G. § 12–202 is a restriction on the powers given under Ed. § 12–104(b), specifically, the ability to 'sue or be sued' and the ability to 'enter into contracts of any kind' because (1) despite this Court's labeling S.G. § 12–202 as a condition precedent to the waiver of sovereign immunity, S.G. § 12–202 has been "commonly thought of and referred to as a statute of limitations," which is a synonym for *restriction;* and, (2) the one-year period detailed in S.G. § 12–202 "conflict[s] with and 'restrict[s]' the regular three years corporate statute of limitations." Thus, Magnetti asserts that, for S.G. § 12–202 to be applicable to the University, the statutory language of S.G. § 12–202 has to specifically reference the University System of Maryland.

Furthermore, Magnetti argues that "nowhere in the [Ed. § ] 12–104 did the Board of Regents and the Maryland legislature choose to create a limitation to contract claims through a sovereign immunity defense." Magnetti explains that the "comprehensive nature of [Ed. § ] 12–104" shows that the General Assembly did not intend to give the University sovereign immunity in contract claims. Specifically, Magnetti points to the express incorporation of the Maryland Tort Claim Act[5] into Ed. § 12–104(i), while noting that "there exists no [such] incorporation of the provisions of Title 12, Subtitle 2 of the State Government Article." Magnetti suggests that the General Assembly purposefully excluded the incorporation of S.G. §§ 12–201 and 12–202 to the Education Article because it "intended in the plain text of [Ed. § ] 12–104(b) that there should be no such limitations [against the University], [so] that common law contract causes of action do not fall under the restriction of [S.G.] § 12–202 when the offending actor is the University System of Maryland." Mag-

---

5. Md.Code (1984, 2004 Repl.Vol.), §§ 12–101 through 12–110 of the State Government Article.

netti asserts that the general, three year statute of limitations period applies to his complaint.

■ The University counters that the 2004 amendment to Ed. § 12–104(a) does not render S.G. § 12–202 inapplicable to the University. The University asserts that "as the [C]ircuit [C]ourt correctly concluded, nothing in the language of the Education Article § 12–104(a) suggests that the legislature intended to override the common law principles of sovereign immunity that are preserved in State Government § 12–202." Rather, the University argues that both the Circuit Court and the Court of Special Appeals found that " 'the stated purpose' of the legislation w as to define 'the relationship between the Board of Regents and other state agencies.' " Therefore, the University contends, Ed. § 12–104(a) does not affect the applicability of S.G. § 12–202 to the University, and, as such, Magnetti was required to file his complaint against the University within the prescribed one-year period. The University maintains that Magnetti's complaint is thus barred by sovereign immunity because he failed to file within that one-year period. We agree with the University.

Title 12 of the State Government Article governs the liability of governmental entities, defining the scope and general applicability of the doctrine of sovereign immunity. Of particular interest to the case *sub judice,* Subtitle 2, entitled "Actions in Contract," defines the extent to which the State and/or its covered officers and units waive sovereign immunity in contract actions.[6] S.G. § 12–201, entitled "Sovereign immunity defense barred," reads in pertinent part:

---

**6.** In 1976, the General Assembly first addressed the State's use of the common law doctrine of sovereign immunity in contract actions. *See* 1976 Md. Laws, Ch. 450. Concerned, in part, about the moral implications of the State's use of the common law doctrine in contract actions, the General Assembly sought to waive the State's and its political subdivisions' sovereign immunity, subject to certain conditions and limitations. *Id.* ("The Governor's Commission to Study Sovereign Immunity believes that there exists a moral obligation on the part of any contracting party, including the State or its political subdivisions, to fulfill the obligations of a contract[.]"). Indeed, as Judge Wilner, writing for this Court in *Baltimore County v. RTKL Associates, Inc.,* 380

(a) Except as otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a

---

Md. 670, 846 A.2d 433 (2004), stated in discussing the legislative history behind the passage of House Bill 885: "Until the enactment of that law, the State and its agencies enjoyed a common law sovereign immunity from suits in both contract and tort: 'neither a contract nor a tort action [could] be maintained against the State unless specific legislative consent had been given and funds (or the means to raise them) are available to satisfy the judgment." *RTKL*, 380 Md. at 674–75, 846 A.2d at 436 (quoting *Welsh*, 308 Md. at 58–59, 521 A.2d at 315 (1986)).

The General Assembly enacted five separate provisions for the waiver of sovereign immunity in contact actions, including Article 41, § 10A, the precursor to S.G. §§ 12–201 through 12–203. *See* 1976 Md. Laws, Ch. 450; Md. Code (1976), Art. 23A, § 1A (applying the waiver of sovereign immunity in contract actions to incorporated municipalities); Md.Code (1976), Art. 25, § 1A (applying the waiver of sovereign immunity in contract actions to non-chartered, non-code counties) Md.Code (1976), Art. 25A, § 1A (applying the waiver of sovereign immunity in contract actions to chartered counties); Md. Code (1976), Art. 25B, § 13A (applying the waiver of sovereign immunity in contract actions to code counties); Md.Code (1976), Art. 41, § 10A (applying the waiver of sovereign immunity in contract actions to the State, its officers, and its administrative departments). In doing so, the General Assembly noted that it was attempting to satisfy this Court's holding that, under "the common law doctrine of sovereign immunity, a suit cannot be maintained against the State or its political subdivisions, unless authorized by the Legislature, and funds are available to satisfy any judgment rendered." 1976 Md. Laws, Ch. 450. *See Maas*, 173 Md. at 558, 197 A. at 124 (stating that " . . . suits may not be maintained [against the State] unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose."); *Board of Trustees of Howard Community College v. John K. Ruff, Inc.*, 278 Md. 580, 590, 366 A.2d at 366 ("This Court has consistently held that suits may not be maintained unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose.")

The statutory language pertaining to the waiver of sovereign immunity of the State and its covered officers and units has been recodified twice since its original enactment. On July 1, 1981, the statutory language of Article 41, Section 10A was transferred without substantive change to Article 21, Sections 7–101 and 7–102. 1980 Md. Laws, Ch. 775, § 8. *See also* Md.Code (1957, 1973 Repl.Vol., 1980 Supp. Vol.), Art. 21, §§ 7–101 & 7–102. In 1984, the General Assembly, in enacting the State Government Article, recodified Article 21, §§ 7–101 & 7–102 without substantive change as Section 12–201, *et seq.* 1984 Md. Laws, Ch. 284, § 1.

court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee.

S.G. § 12–202 provides that:

A claim under this subtitle is barred unless the claimant files suit within 1 year after the later of:

(1) the date on which the claim arose; or

(2) the completion of the contract that gives rise to the claim.

Magnetti does not contest that S.G. § 12–201 applies to the University. Indeed, it is without question that the waiver of sovereign immunity applies and includes the University. In *Stern,* we held that S.G. § 12–201 was applicable to the University in the dispute over a tuition increase on the theory of a breach of contract, stating:

There is no doubt ... that the Board is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity. *See* Md.Code (1978, 2001 Repl.Vol.), § 12–102 of the Education Article; *see also Frankel v. Board of Regents of University of Maryland System,* 361 Md. 298, 301, 761 A.2d 324, 325 (2000) (recognizing that the University of Maryland, which is a part of the University System of Maryland, is an independent unit of the Maryland State government); *Maas,* 173 Md. at 557, 197 A. at 124 (recognizing that the University of Maryland was a State actor for the purposes of sovereign immunity); *Pearson v. Murray,* 169 Md. 478, 482, 182 A. 590 (1936) (holding that the University of Maryland Law School was a State agency). [T]he Board is clearly considered a State actor....

*Stern,* 380 Md. at 702, 846 A.2d at 1002 (footnote omitted). *See also Towson Univ. v. Conte,* 384 Md. 68, 96, 862 A.2d 941, 957 (2004) (recognizing that claims over state employment contracts are subject to the one-year condition precedent set forth in S.G. § 12–202); *Frankel,* 361 Md. at 308, 761 A.2d at 329 (noting that Frankel's claim of a tuition overcharge

against the University of Maryland was not barred by S.G. §§ 12–201 and 12–202 because Frankel filed with the one-year prescribed period).

As explained above, Magnetti disputes the applicability of S.G. § 12–202 to the University on the basis of the 2004 amendment to Ed. § 12–104(a). Ed. § 12–104(a), as amended in 2004, now reads as follows:

> In addition to any other powers granted and duties imposed by this title, and subject to the provisions of Title 11 of this article and any other restriction imposed by law by specific reference to the University System of Maryland, or by any trust agreement involving a pledge of property or money, the Board of Regents has the powers and duties set forth in this section.

We find this argument without merit.

First, in *State v. Sharafeldin*, 382 Md. 129, 148, 149, 854 A.2d 1208, 1219 (2004), Judge Wilner, writing for this Court, explained that S.G. §§ 12–201 and 12–202 were "intended as a conditional waiver of the State's sovereign immunity in contract actions," and "*must be read together.*" (Emphasis added). Specifically, "Section 12–201 precludes the State and its agencies from raising the defense of sovereign immunity in a contract action "in a court *of* the State," meaning a court that is part of the Maryland judiciary. *Sharafeldin*, 382 Md. at 149, 854 A.2d at 1219. We ultimately held that "[S.G.] § 12–202 is not a mere statute of limitations but sets forth a condition to the action itself." As Judge Wilner pointed out, "[t]he waiver of the State's immunity vanishes at the end of the one-year period [specified in S.G. § 12–202], and an action filed thereafter is … [barred]." *Sharafeldin*, 382 Md. at 148–49, 854 A.2d at 1219. Therefore, it is clear that S.G. §§ 12–201 and 12–202 must be read together in order to understand the limitation and/or condition of the University's waiver of sovereign immunity in contract actions.

In addition, a plain reading of the statutory provisions suggests that Ed. § 12–104(a) does not affect the applicability of S.G. § 12–202 to the instant matter. By its plain terms,

Ed. § 12–104(a) is applicable only to those restrictions affecting the powers and duties of the Board of Regents. S.G. § 12–202, however, places upon the claimant, not the University System of Maryland, the condition precedent for bringing a contract claim against the State and/or its covered units or officers. Therefore, we hold that S.G. § 12–202 is not a restriction placed upon the University and thereby does not implicate Ed. § 12–104(a). On the contrary, S.G. § 12–202 is a statutory requirement applicable only to claimants seeking relief against the State through a contract claim.

By its plain language, Ed. § 12–104(a) extends to the Board of Regents every duty and power set forth in Title 12 of the Education Article, including those delineated in Ed. § 12–104(b), subject to (1) any and all restrictions set forth in Title 11 of the Education Article, (2) any trust agreements involving a pledge of property or money, and (3) any other restriction imposed by law. Notably, the statutory language further requires that any restriction outside those in Title 11 of the Education Article and in covered trust agreements must specifically reference the University System to be applicable to the University System of Maryland.

In *Kushell v. Dep't of Natural Resources*, 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005), we discussed statutory interpretation, stating:

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.

In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with force d or subtle interpretations that limit or extend its application." Statutory text " 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " The plain language of a provision is not interpreted in

isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.'"

(Internal citations omitted). We have also stated that this Court must read and "construe legislative dilution of governmental immunity narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat." *Stern*, 380 Md. at 720, 846 A.2d at 1012–13.

When read narrowly, S.G. § 12–202 is clear and unambiguous in its purpose. In plain language, S.G. § 12–202 bars a claimant from seeking relief against the State or its covered officers or units in a contract action if the claimant does not file his or her claim within one year of the claim's accrual date. S.G. § 12–202 clearly places the burden of effectuating a waiver of sovereign immunity on the claimant, as it is the claimant who must file within one year of the claim's accrual date to enjoy the waiver of sovereign immunity. As we stated in *Sharafeldin*, "[S.G.] § 12–202 is not a mere statute of limitations [which can be waived] but sets forth a condition to the action itself." *Sharafeldin*, 382 Md. at 148–49, 854 A.2d at 1219. In our view, S.G. § 12–202 does not explicitly or by implication affect the University's ability to sue or be sued because no restriction is placed upon the Board of Regents or the University. Therefore, we hold that the statutory requirements contained in Ed. § 12–104(a) do not affect the applicability of S.G. § 12–202 to the instant matter.

As a secondary argument, Magnetti contends that the "Court of Special Appeals' opinion fails to properly consider

and is inconsistent with this Court's decision" in *Maryland–National Capital Park and Planning Commission v. Anderson*, 395 Md. 172, 909 A.2d 694 (2006). Magnetti argues that, like the case before this Court in *Anderson*, there are two competing and conflicting statutes at play in the case *sub judice*—the specific statute Ed. § 12–104 and the general statute S.G. § 12–202. Magnetti then quotes the following language from *Anderson* to argue that, as the more specific statute, Ed. § 12–104 overrules the applicability of S.G. § 12–202 to the instant matter: "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Anderson*, 395 Md. at 194, 909 A.2d at 707 (internal quotation marks and citation omitted). Magnetti asserts that his claim, as a "common law breach of contract action under *Towson University v. Conte*, 384 Md. 68, 862 A.2d 941 (2004)," enjoys a three year limitations period. We disagree with Magnetti's assessment of the conflict and find *Anderson* inapplicable to the instant case.

In *Anderson*, this Court examined the interplay between competing and conflicting statutes, namely, the Law Enforcement Officer's Bill of Rights ("LEOBR")[7], and the state Administrative Procedure Act ("APA")[8]. *Anderson*, 395 Md. at 176–77, 909 A.2d at 696. Specifically, we were called upon to examine "whether a[n administrative b]oard's finding of 'not guilty' entitles the [Maryland–National Capital Park and Planning] Commission to seek judicial review of that decision under the LEOBR or the APA" and, if it did, to "determine if the judicial review provisions of the APA conflict[ed] with the judicial review provisions of the LEOBR." *Anderson*, 395 Md. at 181, 909 A.2d at 699.

In reviewing the statutory language of both the LEOBR and the APA, we determined that the two statutes conflicted

---

7. Md.Code (2003), § 3–101 *et seq.* of the Public Safety Article.

8. Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article.

as to whether the Commission could seek judicial review of an adverse administrative decision—that is, a not guilty finding. *Anderson*, 395 Md. at 192–93, 909 A.2d at 706. We read the LEOBR to contain specific and strict requirements for judicial review, namely, a "guilty" finding from the administrative board and a final order from the Chief or his designee regarding the penalty for the officer's conduct. *Anderson*, 395 Md. at 188, 909 A.2d at 703. We then noted that the APA normally permits an agency to seek judicial review of an adverse administrative decision. *Anderson*, 395 Md. at 192–93, 909 A.2d at 706.

Because we found the statutes to conflict as to whether the Commission could seek judicial review of an adverse administrative decision, we were required to determine which statute was controlling in that case. In doing so, we set forth the following statement of law regarding conflicting statutes:

> "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Ghajari*, 346 Md. at 116, 695 A.2d at 150 (citing *Farmers & Merchants Bank v. Schlossberg*, 306 Md. 48, 63, 507 A.2d 172, 180 (1986)). In *Ghajari*, we stated that when the statutes conflict, "the specific statute is controlling and the general statute is repealed to the extent of the inconsistency." *Ghajari*, 346 Md. at 116, 695 A.2d at 150. In such a case, "the court should give effect to the specific statute in its entirety and should retain as much of the general statute as is reasonably possible." *Id.*

*Anderson*, 395 Md. at 194, 909 A.2d at 707. We concluded that the LEOBR was the controlling statute as it provided exclusive administrative remedies for law enforcement officers and thus superseded any conflicting provision of the APA.[9] *Anderson*, 395 Md. at 195, 909 A.2d at 707.

---

9. In so concluding, we determined that the LEOBR was written for "a specific subset of individuals who work for specific state agencies [ (which Anderson did) ], whereas the APA applie[d] to these individuals and globally all other individuals working for all other State agencies."

As explained above, we conclude that the plain language of S.G. § 12–202 and Ed. § 12–104(a) do not conflict. Ed. § 12–104(a), in essence, defines the relationship between the Board of Regents and other state agencies and delineates the statutory limits of the Board of Regents' powers and duties.[10] S.G. § 12–202, on the other hand, is a statutory requirement, a condition precedent, applicable only to claimants seeking relief against the State (or its covered officers or units) through a contract claim. S.G. § 12–202 does not act to implicate the powers or duties of the Board of Regents or the University System of Maryland. Because S.G. § 12–202 and Ed. § 12–104(a) do not conflict or compete in their provisions regarding the University's sovereign immunity, we do not find our analysis in *Anderson* applicable to the case *sub judice*.

In sum, we hold that S.G. § 12–202 is the applicable condition precedent to the bringing of a contract-based cause of action against the State and/or a covered unit or employee. Magnetti does not contest that his complaint was filed outside the one-year period prescribed in S.G. § 12–202. Indeed, the Circuit Court docket indicates that Magnetti filed his complaint on June 13, 2005, nearly three years after his claim against the University arose. Failure to satisfy the condition precedent results in the dismissal of the action as the State has retained its immunity from such suits. *Sharafeldin*, 382

---

*Anderson*, 395 Md. at 194, 909 A.2d at 707. In addition, we pointed out that there was specific language in the LEOBR which indicated that the LEOBR should control over conflicting statutes, including the APA. *Id.*

**10.** Ed. § 12–104(a) was amended in 2004 to clarify the law regarding the governance of the University System of Maryland after similar language was enacted for St. Mary's College of Maryland in 2003. Senate Bill 738, which contained the amendment, provided the following purpose for the amendment: "providing that the authority of the Board of Regents of the University System of Maryland may not be superseded by any State agency or office in certain management affairs except by a provision of law that specifically references the University System of Maryland." It is clear from the purpose of the amendment that the General Assembly intended to clarify the University System of Maryland's relationship with other state agencies as it gave the University System of Maryland more autonomy in the management of its affairs.

Md. at 148, 854 A.2d at 1219 (2004). Because he filed the complaint outside the one-year time period, he did not satisfy the condition precedent for a waiver of the University's sovereign immunity.

## B.

### The Provisions of Ed. § 12–104 (b)

As his alternative basis, Magnetti contends that four provisions of Ed. § 12–104(b), when read together, wholly waive the University's sovereign immunity in contract actions for teachers with common law claims of breach of contract—Ed. § 12–104(b)(1), (3), (5) and (8).[11] Specifically, Magnetti argues that Ed. § 12–104(b)(1), in discussing how the University can exercise its statutorily-granted corporate powers, stresses the nongovernmental nature of many of the functions of the University and illustrates the ability of others to deal with the University on an equitable basis in the exercise of these powers,

---

11. Ed. § 12–104(b) reads as follows:
> (b) *Exercise of corporate powers.*—In addition to the powers set forth elsewhere in this title, the University may:
> (1) Exercise all the corporate powers granted Maryland corporations under the Maryland General Corporation Law;
> (2) Adopt and alter an official seal;
> (3) Sue and be sued, complain, and defend in all courts;
> (4) Maintain an office at the place the Board of Regents may designate;
> (5) Enter into contracts of any kind, and execute all instruments necessary or convenient with respect to its carrying out the powers in this subtitle to accomplish the purposes of the University;
> (6) Subject to the provisions of subsection (h) of this section, acquire, hold, lease, use, encumber, transfer, exchange, or dispose of real and personal property;
> (7) Borrow money from any source to acquire personal property as provided in § 12–105(c) of this subtitle; and
> (8) In addition to the powers set forth in Title 19 of this article and subject to the approval of the Board of Public Works, borrow money from any source for any corporate purpose, including working capital for its operations, reserve funds or interest, and mortgage, pledge, or otherwise encumber the property or funds of the University, and contract with or engage the services of any person in connection with any financing, including financial institutions, issuers of credit, or insurers.

without the University's use of sovereign immunity. These corporate powers include the powers to sue and be sued, complain and defend actions in court, make contracts and guarantees, and incur liabilities and borrow money. With regard to Ed. § 12–104(b)(3) and Ed. § 12–104(b)(5), Magnetti argues that this Court held in *Frankel* that these provisions waive the University's sovereign immunity in contract actions concerning its statutory duties and obligations. Lastly, Magnetti contends that "[Ed.] § 12–104(b)(8) underscores how the University System of Maryland, due to its corporate nature, has many available options in paying off judgments and suits," including " 'borrow[ing] money from any source for any corporate purpose ... and contract[ing] with or engag[ing] the services of any person in connection with any financing, including financial instructions, issuers of credit, or insurers.' "

The University counters that Magnetti's reliance on *Frankel* is misplaced as this Court's decision in *Stern* clarified Ed. § 12–104(b)(3)'s role in waiving the University's sovereign immunity. The University asserts that *Stern* made it clear that Ed. § 12–104(b)(3) alone was insufficient to waive the University's sovereign immunity because, under *Maas* and *Ruff,* actions requesting a monetary judgment must set forth both an express statutory waiver of sovereign immunity and the availability of funds to satisfy an adverse judgment. The University argues that Magnetti "is unable to show that funds have been appropriated for the purpose of satisfying adverse judgments."

We need not address this issue as Magnetti has clearly failed to satisfy the necessary condition precedent for the waiver of the University's sovereign immunity. It is clear that the instant matter falls within the coverage of S.G. § 12–201. Indeed, neither the University nor Magnetti has ever argued that the instant matter falls outside the coverage of S.G. § 12–201. So long as an action against the State and/or its covered officers or units, including the University, falls within the applicability of S.G. § 12–201, the claimant must fulfill the condition precedent set forth in S.G. § 12–202 in order to

effectuate the waiver of sovereign immunity.[12] This is true regardless of the express statutory waiver relied on by the claimant in his or her contract claim against the State and/or its covered officers or units. A claimant may not choose to disregard the requirements for a waiver of sovereign immunity under S.G. §§ 12–201 and 12–202 in favor of another statutory waiver of sovereign immunity, if S.G. §§ 12–201 is applicable to his or her claim. We believe that to do otherwise would negate our duty to read and construe overlapping statutes together and in harmony. *See Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462, 869 A.2d 822, 834 (2005) (citation omitted) (" '[W]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope.' ").

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

---

**12.** Magnetti points to *Frankel* for support of his contention that the provisions of Ed. § 12–104(b), when read together, waive the University's sovereign immunity in contract actions concerning matters within the scope of the University's statutory duties and obligations. It is clear from our analysis in *Stern*, however, that the *Frankel* Court's use of Ed. § 12–104(b)(3) to find a wavier of sovereign immunity, without a discussion of the matter's application to S.G. § 12–201, is limited to the facts of that case, namely, a contract action to recover tuition overcharges. *Stern*, 380 Md. at 710, 846 A.2d at 1007. It was not necessary for this Court, in *Frankel*, to determine whether S.G. § 12–201 applied to Mr. Frankel's claim against the University because, "there was legislation enabling the Board to adopt a policy regarding residency reclassifications and an express policy adopted by the Board pursuant to that authority relating to residency reclassifications and refunds of tuition sums" in necessary instances. *Stern*, 380 Md. at 710, 846 A.2d at 1007. Nevertheless, we noted in *Frankel* that "[e]ven if the only basis for [Mr. Frankel's] claim were the general waiver of governmental immunity in contract actions ..., [Mr. Frankel]'s claim would not [have been] barred by the one year period of limitations in [S.G. § ] 12–202." *Frankel*, 361 Md. at 308, 761 A.2d at 329.