943 A.2d 108

Kevin MOONEY

v.

UNIVERSITY SYSTEM OF MARYLAND.

No. 302, Sept. Term, 2007.

Court of Special Appeals of Maryland.

March 3, 2008.

Gordon S. Young (Jeremy S. Friedberg on the brief), Owings Mills, for Appellant.

Sally L. Swann (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: SALMON, JAMES R. EYLER, and WOODWARD, JJ.

JAMES R. EYLER, Judge.

Chesapeake Cable, LLC ("Chesapeake") borrowed money from Kevin Mooney and Teresa Mooney, appellants. To secure the repayment of the loan, Chesapeake granted a security interest in all of its personal property, including

receivables, to appellants. The University System of Maryland, appellee, had a contractual relationship with Chesapeake, pursuant to which Chesapeake provided cable services in exchange for payment. Chesapeake defaulted on the loan and, according to appellants, notified appellee of the default and appellants' security interest in accounts receivable. Appellee paid the balance owed on the account to Chesapeake and not to appellants.

Appellants sued appellee in the Circuit Court for Prince George's County, alleging a violation of Maryland Code (2002 Repl.Vol., 2007 Supp.), § 9–406(a) of the Commercial Law Article ("C.L.").[1] Appellants appeal from a summary judgment entered in favor of appellee on the ground of governmental immunity. We shall vacate the judgment.

### Factual Background

In October, 2002, appellants and Chesapeake entered into a credit line agreement and Chesapeake executed two promissory notes in the amount of $200,000 and $50,000. Under the notes, Chesapeake agreed to perform certain obligations and to make various payments to appellants. Chesapeake entered into a security agreement with appellants to secure the notes, granting appellants a security interest in, among other things, Chesapeake's accounts receivable. To perfect their interest, appellants filed a financing statement with the Maryland State Department of Assessments and Taxation.

Chesapeake defaulted on its obligations under the terms of the notes when it failed to make timely payments to appellants. In a letter dated April 9, 2003, appellants notified Chesapeake of its default and of their intention to exercise their rights under the notes to "take possession of certain Collateral, in particular the accounts receivable." Appellants stated their intent to "notify all account debtors ... to make payment directly to [them]."

---

1. C.L. § 9–406, quoted in part below, addresses, among other things, the rights of an account debtor when a security interest exists in accounts receivable.

Appellee had a contract with Chesapeake wherein appellee agreed to make payments to Chesapeake for services rendered. According to appellants, on April 13, 2003, five days after notifying Chesapeake of its default, appellants sent a letter to appellee, addressed to its accounts payable department, notifying appellee of Chesapeake's default and "instruct[ing] [appellee] to make payment on the above-referenced account directly to the Mooneys." Appellee does not agree that it received notice, but that issue is not before us.

On April 22, 2003, appellee issued a check to Chesapeake in the amount of $43,005.00. According to appellants, appellee terminated its contract with Chesapeake on June 19, 2003.

On June 4, 2004, appellants filed a complaint in circuit court, seeking $43,005.00, attorney's fees, interest, and costs, based on an alleged violation of C.L. § 9–406. The parties filed cross motions for summary judgment. On September 7, 2005, the circuit court granted appellee's motion on the ground that, because there was no contract between appellants and appellee, appellants' claim was based in tort. As a result, the court reasoned that they were obligated to provide notice under the Maryland Tort Claims Act, but failed to do so.

Appellants noted an appeal to this Court. In an unreported opinion, *Mooney v. University System of Maryland*, No. 1843, Sept. Term, 2005, 169 Md.App. 750, filed August 7, 2006, we vacated the judgment on the ground that appellants' claim was for enforcement of a security interest under the Uniform Commercial Code and was not a tort action. We did not address any other issues.

On remand, the parties again filed motions for summary judgment. Appellee again asserted that it was immune from liability, arguing that it had not waived sovereign immunity for liability under Title 9 of the Uniform Commercial Code and that it had not received notice of Chesapeake's assignment of accounts receivable to appellants. By order dated March 27, 2007, the circuit court granted appellee's motion on the ground that appellee had not expressly waived sovereign

immunity under Title 9 of the Uniform Commercial Code. This appeal followed.

## Contentions

Appellants contend they have a right to enforce their security interest, which is not barred by sovereign immunity. Appellee argues appellants' claim is barred by sovereign immunity because: (1) there is no express waiver of immunity in Title 9 of the Uniform Commercial Code and the legislature has not appropriated funds for the satisfaction of a judgment under § 9–406(a); (2) there is no written contract between appellants and appellee and § 9–406(a) does not create a cause of action in contract; and, (3)alternatively, suit was not filed in a timely manner.

## Standard of Review

"When reviewing a trial court's grant of summary judgment, an appellate court reviews the decision *de novo.*" *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154, 161, 909 A.2d 683 (2006) (citing *Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund*, 385 Md. 99, 106, 867 A.2d 1026 (2005)). "Summary judgment should only be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Hart v. Subsequent Injury Fund*, 172 Md.App. 159, 165, 913 A.2d 666 (2006) (citing Md. Rule 2–501(e)). "If there is no genuine dispute of material fact, we determine whether the circuit court's ruling was proper as a matter of law." *Id.* (citations omitted).

## Discussion

### A.  *Sovereign Immunity*

■  The sole question on appeal turns on whether appellants' suit is barred because appellee has not waived sovereign immunity under Title 9 of the Uniform Commercial Code. As explained below, appellee's arguments miss the point that appellants, as a secured party whose debtor is in default, are enforcing the debtor's contractual rights against appellee. As

explained below, appellee has waived sovereign immunity with respect to the debtor's contractual rights.

The relevant terms, as used in Title 9, "account," "collateral," "secured party," "debtor," and "account debtor," are defined in C.L. §§ 9–102(a)(2), (a)(12), (a)(73), (a)(28), and (a)(3), respectively. In the case before us, appellants are secured parties, Chesapeake is the debtor, and appellee is the account debtor. The monetary obligation by appellee to Chesapeake is an account, and the account receivable is collateral.

Section 9–406, to the extent pertinent, provides:

(a) Subject to subsections (b) through (j), an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

\* \* \*

(f) Except as otherwise provided in §§ 2A–303 of this article and 9–407, and subject to subsections (h) and (i) of this section, a rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, or account debtor to the assignment or transfer of, or creation of a security interest in, an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation:

(1) prohibits, restricts, or requires the consent of the government, governmental body or official, or account debtor to the assignment or transfer of, or the creation of a security interest in, the account or chattel paper; or

(2) provides that the assignment or transfer or the creation, attachment, perfection, or enforcement of a security interest may give rise to a default, breach, right of

recoupment, claim, defense, termination, right of termination, or remedy under the account or chattel paper.

When a debtor defaults, the security interest in an account receivable operates as an assignment by the debtor to the secured party of the right to receive payment from the account debtor. *See generally* C.L. § 9–607(a)(1). Moreover, § 9–406(f) provides that a law which prohibits or requires consent for the assignment of an account for the purpose of creating a security interest in the account receivable is ineffective. C.L. § 9–406(f). Consistent with that provision, CO-MAR 21.05.02.24 provides that "[a] State contract is not transferrable, or otherwise assignable, without the written consent of the procurement officer provided, however, that a contractor may assign monies receivable under a contract after due notice to the State." MD.Code Regs. 21.05.02.24 (2007).

Under the Uniform Commercial Code, except as otherwise expressly stated, the obligations with respect to the assignment of an account are generally in accord with the law of contracts. Pursuant to § 9–404(a), the rights of an assignee of an account are subject to defenses or claims of the account debtor against the assignor which accrue before the account debtor receives notification of the assignment. C.L. § 9–404(a). *See also Motor Vehicle Security Fund v. All Coverage Underwriters, Inc.,* 22 Md.App. 586, 614, 325 A.2d 115 (1974) ("The assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor."). As such, the assignee stands in the shoes of the assignor. *Textor v. Orr,* 86 Md. 392, 398, 38 A. 939 (1897). *See also Maryland Cooperative Milk Producers, Inc. v. Bell,* 206 Md. 168, 178, 110 A.2d 661 (1955) (Defenses existing at the time of the assignment, regarding the contract with the assignor, can be raised against *both* the assignee and assignor.).

■ Under contract law, an obligor under an assigned contract owes a duty of performance to an assignee only when the obligor has received notice of the assignment. *Robinson v. Marshall,* 11 Md. 251, 255–56 (1857) (holding that an

obligor's payment to an assignor without notice of the assignment thereby extinguishes the debt). Not inconsistently, under C.L. § 9–406(a), an account debtor may "discharge its obligation" by paying the assignor until, but not after, it receives notification that the amount due has been assigned and that payment is to be made to the assignee. C.L. § 9–406(a). "After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and *may not* discharge the obligation by paying the assignor." *Id.* (emphasis added).

Subtitle 6 of Title 9 addresses the rights of parties after default by a debtor subject to a security interest. Section 9–601 provides that, after default, a secured party has the rights provided in subtitle 6 and, with certain exceptions, the rights provided by agreement of the parties. Once the debtor defaults, § 9–607(a)(3) provides that the secured party may enforce the obligation of an account debtor and exercise the rights of the debtor with respect to that obligation.

Section 9–607 provides, in pertinent part:

(a) if so agreed, and in any event after default, a secured party:

(1) may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;

\* \* \*

(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor. . . .

The official comment to section 9–607 states that the section "explicitly provides for the secured party's enforcement of the debtor's rights in respect of the account debtor's ... obligations. . . ." C.L. § 9–607 comment 3.

Section 12–201 of the State Government Article of the Maryland Code provides that the State may not raise the defense of sovereign immunity in a contract action based on an authorized written contract. *See* Maryland Code (2004 Repl. Vol., 2007 Supp.), § 12–201(a) of State Gov't Article ("S.G."). The Court of Appeals in *State v. Dashiell*, 195 Md. 677, 692, 75 A.2d 348 (1950), stated that, "when the State enters into a contract with constitutional authority, it acquires rights and incurs responsibilities like those of any individuals, who are parties to such a contract." Furthermore, "[p]unctilious fulfillment of contractual obligations is essential to the maintenance of the credit of public as well as private debtors. . . . To abrogate contracts, in an attempt to lessen government expenditure, would be not the practice of economy, but an act of repudiation." *Id.* (quoting *Lynch v. United States*, 292 U.S. 571, 580, 54 S.Ct. 840, 78 L.Ed. 1434 (1934)).

According to the motion papers filed by appellee in circuit court, the contract between Chesapeake and appellee was in writing. Consequently, appellee waived sovereign immunity with respect to a contract action regarding that authorized written contract. Thus, as secured parties holding a security interest in an account receivable owed by appellee to Chesapeake, appellants can enforce Chesapeake's right to payment, and appellee remains obligated to pay, provided that appellee received proper notification. Because appellee is not immune from an action for payment by Chesapeake, it is not immune from an action to enforce the security interest by appellants because appellants' rights are as an assignee of Chesapeake.

## B. *Timeliness of Suit*

■ Appellee further contends that, even if appellants can assert a cause of action in contract, the cause of action would be barred because it was not timely filed. Specifically, appellee first argues, of course, that a claim under C.L. § 9–406 is not a contract claim to which S.G. §§ 12–201 and 12–202 are applicable. In addition, appellee states that the payments in question were made by appellee in April, 2003 and appellants cannot take advantage of a completion date of a contract to

which they are not parties. Appellants counter that the suit, which was filed on June 4, 2004, was timely because it is based on contract and the contract between Chesapeake and appellee was completed on June 19, 2003.

Title 12 of the State Government Article governs the liability of governmental entities by "defining the scope and general applicability of the doctrine of sovereign immunity." *Magnetti v. University of Maryland, College Park,* 402 Md. 548, 937 A.2d 219 (2007). Furthermore, Subtitle 2 of this Title defines the extent to which the State has waived sovereign immunity as to contract claims. *Id.* Specifically at issue in this case is S.G. § 12–202, which provides that a contract action "is barred unless the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim." The Court of Appeals has held that § 12–202 operates as a condition to the action itself, not merely as a statute of limitations, because the waiver of sovereign immunity "vanishes" after the one year period. *See State v. Sharafeldin,* 382 Md. 129, 148–49, 854 A.2d 1208 (2004). Moreover, the Court of Appeals stated that "it is clear that S.G. § § 12–201 and 12–202 must be read together in order to understand the limitation and/or condition of the University's waiver of sovereign immunity in contract actions." *Magnetti,* 402 Md. at 563, 937 A.2d 219.

Based on the above principles, we agree with appellants as to the law. If there was a valid waiver of sovereign immunity pursuant to S.G. § 12–201 because the contract between Chesapeake and appellee was written, the one year filing period in S.G. § 12–202 would be applicable to the contract.

Appellant needed to file the suit within one year of termination of the contract, pursuant to S.G. § 12–202, because the termination occurred after the date on which the claim arose.

If appellants are correct as to the facts, the suit was filed timely. Appellants' assertion that appellee terminated its contract with Chesapeake on June 19, 2003 appears in their opposition to appellees's first motion to dismiss, filed on August 11, 2004, and in their memorandum in support of their

first motion for summary judgment, which was filed on February 22, 2005. The assertion, however, is not in an affidavit based on personal knowledge of the affiant. Factual issues, including this issue and the issue of proper notice to appellee, will have to be determined on remand.[2]

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

**2.** At oral argument, counsel for appellee contended that appellant, if sovereign immunity were not a bar, had to proceed administratively before the Board of Contract Appeals. That issue is not before us, and we express no opinion on it.